BERNICE MARJORIE GRANSTEDT GORDON,
Plaintiff-Appellee, *v.* THEODORE
GRANSTEDT, JR., Defendant-Appellant,
and AMERICAN SECURITY BANK, et al., Garnishees

No. 5312

AUGUST 15, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by defendant from a judgment for $7,728.24, plus interest and costs, entered by the first circuit court in favor of plaintiff in an action brought by plaintiff upon a judgment for the same principal amount entered by the Superior Court of the State of California, Santa Clara County, hereafter referred to as the Santa Clara court.

The circuit court entered the judgment appealed from pursuant to its order granting plaintiff's motion for summary judgment. The record shows the following undisputed facts:

1. Plaintiff is the sole surviving child of Frank Granstedt, brother of Theodore Granstedt, Sr., and residuary legatee under his will. As such, she is the distributee of the residuary estate of Theodore Granstedt, Sr.

2. Defendant is one of the four children of Theodore Granstedt, Sr. He has been a resident of Hawaii at all times.

3. Theodore Granstedt, Sr., died in Santa Clara County, California, on July 21, 1965. Upon his death, proceedings were undertaken in the Santa Clara court, to administer his estate as an intestate estate. *Defendant participated in the proceedings by nominating an administrator.* The proceedings were completed in August 1966, at which time the estate was distributed equally to the four children of the deceased. The distributive share of each child was $7,144.24. *Defendant accepted the distribution of his share, and filed a receipt for the same in court. The distribution was made in accordance with a decree entered in the proceedings.*

4. Subsequently, a will of Theodore Granstedt, Sr., was discovered. In the will, Theodore Granstedt, Sr., bequeathed $1.00 to each of his four children, and named Frank Granstedt as the residuary legatee. The will was presented to the Santa Clara court for probate on March 28, 1968. *Defendant filed a contest to the probate of the will, and, in connection with the contest, took depositions and answered interrogatories. However, he withdrew the contest on July 17, 1969.* The will was admitted to probate on August 6, 1969. On November 28, 1969, the court entered an order determining the rights of the beneficiaries under the will.

5. Thereafter, plaintiff commenced an action in the Santa Clara court against the four children of Theodore Granstedt, Sr., to recover the amounts distributed to them in the earlier administration proceedings. In the action, defendant was served by mail in Hawaii on

December 14 and 17, 1970. Upon the failure of defendant to file any pleading after the service, the court adjudged defendant to be in default, and entered a judgment against him in the sum of $7,728.24, on October 20, 1971. The amount of the judgment represented the sum of $7,144.24 received by defendant in the earlier administration proceedings, plus interest thereon to the date of the judgment.

The first circuit court entered the judgment appealed from by according full faith and credit to the judgment of the Santa Clara court.

The question for decision on this appeal is whether the judgment of the Santa Clara court, as against defendant, is entitled to full faith and credit in this State under Article IV, section 1 of the United States Constitution. The answer depends on whether the Santa Clara court had personal jurisdiction over defendant at the time it entered the judgment.

The Santa Clara court prefaced the judgment with the following statement regarding its jurisdiction over defendant:

"That THEODORE GRANSTEDT, JR., was validly served by mail on both December 14 and December 17, 1970, and has filed no pleading in this proceeding, and his default has been validly entered. The Court further specifically finds that although THEODORE GRANSTEDT, JR., has at all times been a resident of the State of Hawaii, that because of his contacts with this state in connection with the issues raised in this proceeding, the State of California can exercise personal jurisdiction over the said THEODORE GRANSTEDT, JR."

The court referred to the facts set forth in italics in paragraphs 3 and 4 of the recital of facts in the early portion of this opinion as defendant's contacts with California which authorized it to subject him to its personal

jurisdiction upon the service made in the action.

In the quoted statement, the court made no mention of the California statute on which it based its jurisdiction. However, there is no question that the court relied on California Codes, Code of Civil Procedure §410.10 (West 1954) , which reads:

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

That statute was added to the California Codes by Stats. 1969, c. 1610, § 3. By Stats. 1969, c. 1610, § 30, it was made operative on July 1, 1970, and retroactively applicable to any action commenced prior to the operative date in which summons was issued but not served before that date.

The pertinent California jurisdictional statute in effect before July 1, 1970, was California Codes, Code of Civil Procedure, § 417, which read:

"Where jurisdiction is acquired over a person who is outside of this State by publication of summons * * * , the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State at the time the cause of action arose, at the time of the commencement of the action or at the time of service."

Under that statute, the Santa Clara court would not have acquired personal jurisdiction over defendant upon service made on him in Hawaii, for, according to its finding, defendant was not a resident of California but a resident of Hawaii at all times.

The provision of the California statutes making § 410.10 retroactive to actions commenced prior to July 1, 1970, in which summons was issued but not served before that date, would have posed a question regarding the constitutional validity of such retroactivity provision be-

fore *McGee* v. *International Life Insurance Co.,* 355 U.S. 220 (1957). See *Gillioz* v. *Kincannon,* 213 Ark. 1010, 214 S.W. 2d 212 (1948); Restatement (Second) of Conflict of Laws § 84, Comment *e* (Tent. Draft No. 3, 1956).

In *McGee* v. *International Insurance Co.,* the United States Supreme Court held with regard to retroactive application of another California long-arm statute: "The statute was remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract." (355 U.S. 224)

We think that there can be no question at the present time regarding the constitutional validity of the retroactive application of § 410.10, in the light of the foregoing holding, although it was made with reference to a contention based on impairment of obligation of contract and not on violation of due process. See Restatement (Second) of Conflict of Laws § 29, Comment *c* (1971).

However, this does not end our inquiry. We must consider the further question whether the Santa Clara court subjected defendant to its personal jurisdiction on any basis consistent with the United States Constitution.

Defendant contends that the question should be answered in the negative, principally on the basis of *Pennoyer* v. *Neff,* 95 U.S. 714 (1878).

*Pennoyer* v. *Neff* was decided almost a century ago. In the meantime, *International Shoe Co.* v. *Washington,* 326 U.S. 310 (1945), and other cases of similar tenor have been decided.

The United States Supreme Court stated in *International Shoe Co.* v. *Washington* that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (326 U.S. 316)

In *McGee* v. *International Life Insurance Co., supra,* at page 222, the court recognized "a trend * * * toward expanding the permissible scope of state jurisdiction over * * * nonresidents."

However, *Pennoyer* v. *Neff* has not been reduced to total insignificance by subsequent cases. The expanding trend mentioned in *McGee* v. *International Life Insurance Co.* met a wall in *Hanson* v. *Denckla,* 357 U.S. 235 (1958).

In *Hanson* v. *Denckla,* the court stated at page 251:

> "[T]he requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, * * * , to the flexible standard of International Shoe Co. v. Washington, * * * . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

The expansion by the United States Supreme Court of the scope of personal jurisdiction which state courts may exercise over nonresidents served outside of the forum state has been done on a case by case basis.[1] However, in every case involving that question, the court has referred to the statement in *International Shoe Co.* v. *Washington* that, in order to be relevant, nonresident's contacts with the forum state must be "such that the

---

[1] It is stated in Perkins v. Benguet Mining Co., 342 U.S. 437, 445 (1952): "The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case."

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

For a statement which has played an important role in constitutional decisions, the quoted statement in *International Shoe Co.* v. *Washington* sets forth a vague criterion as observed in Mr. Justice Black's separate opinion in the case. (326 U.S. 322)[2] Thus, it is necessary to ascertain from other statements in the case, and statements in other relevant cases, a more precise and workable standard embodied in that statement.

We think that, in the context in which it was used, the quoted statement in *International Shoe Co.* v. *Washington* included the proposition that nonresident's contacts with the forum state be contacts which gave rise to, or were causally connected with the obligation sought to be enforced in a state court.

That such was the meaning intended in *International Shoe Co.* v. *Washington* appears from a further statement in the case that insofar as the obligations sought to be enforced "arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most cases, hardly be said to be undue." (326 U.S. 319)

Statements of similar tenor are found in *McGee* v. *International Life Insurance Co., supra* at 223; and *Hanson* v. *Denckla, supra* at 251.

The view which we have expressed above is in accord with the law on the point with respect to non-tortious actions, as restated in subsection (2) of Restatement (Second) of Conflict of Laws § 36 (1969), which reads:

" (2) A state has power to exercise judicial jurisdiction over an individual who has done, or caused

---

[2]It is to be noted that the statement in International Shoe Co. v. Washington contains the phrase "traditional notions of fair play and substantial justice" in quotes. That phrase was taken from Milliken v. Meyer, 311 U.S. 457, 463 (1940). Millikin v. Meyer, in turn, based the phrase on a statement in McDonald v. Mabee, 243 U.S. 90, 91 (1917), regarding a common law requirement that a judgment not be "contrary to natural justice."

to be done, an act in the state with respect to any cause of action not in tort arising from the act unless the nature of the act and of the individual's relationship to the state and to other states make the exercise of such jurisdiction unreasonable."

With regard to that restatement of the law, it is stated in Comment *a*: "The doing of an act, or the causing of an act to be done, in a state do not create a sufficient relationship between the individual and the state to give the state judicial jurisdiction over him as to causes of action unrelated to the act."

In Robert A. Leflar, American Conflicts Law, § 39, p. 72 (1959), Professor Leflar has analyzed the statement in *International Shoe Co.* v. *Washington* somewhat differently, but the end result which he has reached is essentially similar to our conclusion. In Professor Leflar's view, the requirement of "fair play and substantial justice" referred to in the case embraced the following propositions: "(a) the cause of action must involve local elements which make it reasonably desirable, from the point of view of good judicial administration, that the case be tried at the selected forum, and (b) the defendant must have sufficient causal responsibility for the presence of these elements in the forum state to justify a conclusion that he has by his own voluntary conduct subjected himself to answering for them there."

That being the case, the answer to the question whether the Santa Clara court acted in a manner consistent with the United States Constitution depends on whether the obligation which plaintiff sought to have the court enforce against defendant arose out of, or was causally connected with, defendant's contacts in California; or, if Professor Leflar's analysis is followed, whether defendant had sufficient causal responsibility for the presence in California of the elements in plaintiff's cause of action against him to make it reasonably desirable to have the case tried in the Santa Clara court and to justify the con-

clusion that he had by his voluntary conduct subjected himself to answering for them in that court.

We will first inquire whether the obligation which was sought to be enforced against defendant in the Santa Clara court arose out of, or was causally connected with, defendant's California contacts.

The obligation sought to be enforced was the obligation of defendant to pay over to plaintiff the share of the estate of Theodore Granstedt, Sr., which the administrator of the estate had paid to defendant, but to which plaintiff, instead of defendant, was entitled under the will of the deceased. That obligation existed, first, because the administrator had made the payment; and, second, because plaintiff was entitled to the entire estate of Theodore Granstedt, Sr., including the share of the estate paid by the administrator to defendant.

The payment by the administrator to defendant was not due to any action taken by defendant in California.

Defendant filed a nomination for an administrator in the Santa Clara court. However, that court would have appointed an administrator even in the absence of such nomination. Furthermore, the payment to defendant was made not because the particular administrator nominated by defendant was appointed but because the Santa Clara court ordered the administrator to make the payment. The Santa Clara court entered the order for payment because defendant was entitled to the payment under the California statute relating to succession to decedent's estate in the absence of a will. At the time the Santa Clara court entered the order for payment, the evidence before it was that Theodore Granstedt, Sr., had died intestate.

The filing by defendant in the Santa Clara court of a receipt for the payment made by the administrator served only a record keeping purpose. It had no causal connection whatsoever with the making of the payment by the administrator.

Defendant filed in the Santa Clara court a contest

to the probate of the will of Theodore Granstedt, Sr., and participated in the proceedings held in that court in relation thereto. Obviously, plaintiff's right to the estate of Theodore Granstedt, Sr., did not arise from, nor was it causally connected in any manner with, defendant's appearance in the Santa Clara court to contest the probate of the will. Plaintiff acquired the right because Theodore Granstedt, Sr., named her as the sole beneficiary in his will, not because of anything that defendant did in California.

The only argument which may conceivably be made to justify the exercise by the Santa Clara court of personal jurisdiction over defendant on the basis of his appearance in that court in connection with the will contest is to say that such appearance implied a consent on the part of defendant that he would subject himself to the personal jurisdiction of that court in any subsequent litigation there on any matter involving the estate of Theodore Granstedt, Sr. We do not see any basis on which such consent may be implied.

Turning to a consideration of the question at hand in the light of Professor Leflar's analysis of the statement in *International Shoe Co.* v. *Washington,* the elements in plaintiff's cause of action against defendant which made it reasonably desirable, from the standpoint of good judicial administration, to have the case tried in the Santa Clara court were: (a) the fact that the Santa Clara court had the record in the administration proceedings of the estate of Theodore Granstedt, Sr., in which the administrator made the payment to defendant; and (b) the fact that the Santa Clara court also had the record in the proceedings for the probate of the will of Theodore Granstedt, Sr., under which plaintiff's right to the entire estate was confirmed.

Defendant had no causal responsibility whatsoever for the presence of those elements in California. The Santa Clara court had the record in both proceedings

solely because Theodore Granstedt, Sr., died domiciled in California, and California was the proper jurisdiction to administer his estate and to probate his will.

The fact that plaintiff's action against defendant in the Santa Clara court appeared to state a meritorious cause of action would have no relevancy in the determination of a California court as the proper forum, so long as the cause of action was unrelated to defendant's activities in California. *Cf.* Restatement (Second) of Conflict of Laws § 36, Comment *a, supra.*

Reversed and remanded to the circuit court for further proceedings on Count II of the Amended Complaint, which is not affected by this reversal.

*Richard D. Welsh* for defendant-appellant.

*Henry I. Kuba* (*Michael F. O'Connor* on the brief, *Chuck & Fujiyama* of counsel) for plaintiff-appellee.

---

DISSENTING OPINION OF KOBAYASHI, J., WITH WHOM LEVINSON, J., JOINS

**I dissent.**

The reasoning of the majority of the court in concluding that the appellant did not have the requisite minimum contacts (*McGee* v. *International Life Insurance Co.,* 355 U.S. 220 (1957); *Hanson* v. *Denckla,* 357 U.S. 235 (1958)) with the State of California is, indeed, illusive and illogical.

In the instant case, the subject matter sought by appellee and held by appellant is $7,144.24 plus interest. Said amount constituted a one-fourth portion of the estate of Theodore Granstedt, Sr., who died in Santa Clara County, California. Appellant participated in the initial intestate proceedings and accepted the distribution of his alleged share of the estate. When a will was discovered, subsequently, naming appellee's father as the sole residuary legatee, appellant filed a contest to the

probate of the will and in connection with the contest, took depositions and answered interrogatories, though he subsequently withdrew the contest of the will. The will was admitted to probate and thus the probate court held that appellant was not entitled to the amount appellant had received in the initial proceeding. Thereafter appellee brought action to collect from appellant the distributive share that was paid to appellant erroneously. Judgment entered in this last action is at issue herein. All the above legal proceedings occurred in the State of California and appellant participated as above stated though he was a resident of Hawaii and not a resident of California.

How the majority of the court can conclude that the causes of action herein are unrelated to the actions of appellant in the State of California in the receipt of the monies in question is beyond this writer's comprehension. All acts of the appellant and all causes of action herein deal with the same distributive share which appellant received erroneously. Furthermore, the court in Santa Clara, California, in its judgment stated:

> that because of his contacts with this state in connection with the issues raised in this proceeding, the State of California can exercise personal jurisdiction over the said THEODORE GRANSTEDT, JR.

I agree with the majority that the United States Supreme Court has expanded the scope of personal jurisdiction which state courts may exercise over nonresidents served outside of the forum state and that said expansion has been done on a case by case basis.

In said expansion three basic factors have evolved denoting the constitutional limitations upon the exercise of state court jurisdiction over nonresident defendants. The Supreme Court of Texas in *O'Brien* v. *Lanpar Company*, 399 S.W.2d 340, 342 (Tex. 1966), quoting the Supreme Court of Washington, *Tyee Construction Co.* v.

*Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963), outlined the three basic factors which must coincide if jurisdiction over a nonresident is to be sustained, to-wit:

(1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

I am of the opinion that the appellant had the requisite minimum contact with the State of California, that the facts of the instant case meet the above three basic factors, and that the trial court was correct in granting full faith and credit to the judgment of the Santa Clara court.