BENJAMIN KAILIEHA, JR., Plaintiff-Appellant, *v.* H. DESMOND HAYES, Defendant-Appellee

NO. 5492

MAY 28, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND CIRCUIT JUDGE SODETANI ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY MENOR, J.

The plaintiff in the court below [appellant herein] is a resident of Hawaii. The defendant [appellee herein] is a resident of Virginia who was engaged in the practice of medicine in Norfolk, Virginia. One Linda Bishop, a Hawaii resident, while visiting in Virginia, found it necessary to consult the defendant, who examined her and prescribed medication for her use. The prescription was filled in Virginia. About a week after her consultation with the defendant, and following her return to Hawaii, Linda Bishop lost consciousness while driving on one of the public streets in Honolulu. As a result, she crashed into the automobile driven by the plaintiff, who was injured as a proximate consequence of the collision. The complaint[1] alleges that the defendant

---

[1] We look to the allegations to determine jurisdiction in this type of case. Texair Flyers, Inc. v. Dist. Ct., First Jud. Dist., 506 P.2d 367, 370 (Sup. Ct. Col. 1973); Nelson v. Miller, 11 Ill. 2d 378, 391-394, 143 N.E.2d 673, 680-681 (1957); 2 Moore, Federal Practice ¶ 4.41-1[3] at 1291.57-58 (2d ed. 1974).

knew Linda Bishop was a Hawaii resident who would be returning to Hawaii shortly after her examination. It charges the nonresident physician with negligence in diagnosing her illness and prescribing medication for her use. The patient, Linda Bishop, is not herself a party to this action.

Service was made upon the nonresident defendant in Virginia pursuant to HRS § 634-71(b). Upon motion by the defendant, who appeared specially through his counsel to challenge the Hawaii court's jurisdiction on constitutional grounds, the trial court dismissed the plaintiff's complaint for lack of jurisdiction over the person of the nonresident defendant. The plaintiff appeals.

The Hawaii "long arm" statute extends the jurisdiction of Hawaii's courts to any person who commits "a tortious act within this State." HRS § 634-71(a) (2). A tort is committed where the injury occurs, and the phrase "tortious act" encompasses the injurious consequences of an act. *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir. 1969); *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 176 N.E.2d 761 (1961). Therefore, statutorily, the court below was not prohibited from assuming jurisdiction over the defendant. The fundamental issue, however, is whether the assertion of jurisdiction by the Hawaii courts over the nonresident Virginia physician would comport with constitutional principles of due process.

*Pennoyer v. Neff*, 95 U.S. 714 (1878), laid down the proposition that a judgment *in personam* against a nonresident party defendant is without any validity if he has not voluntarily appeared or been personally served with process within the forum state. This rule has since been relaxed, so that presently "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *See also McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957). This is not to say, however, that *Pennoyer v. Neff* has been reduced to total insignificance. We

made that clear in *Gordon v. Grandstedt,* 54 Haw. 597, 513 P.2d 165 (1973), in which we quoted the following language from *Hanson v. Denckla,* 357 U.S. 235, 251 (1958):

> "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, *a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."* 54 Haw. at 602, 513 P.2d at 168 (Emphasis added)

While the foregoing cases did not involve tortious acts, it is clear that the requirement of minimum contact is equally applicable to actions sounding in tort. In *Duple Motor Bodies, Ltd. v. Hollingsworth, supra,* the court stated:

> "Here the facts establishing jurisdiction under the Hawaii statute (commission of a tortious act within Hawaii) also establish liability and, where disputed, cannot suffice as contacts with the forum state. *What is needed is some additional factor that would render it fair to require the manufacturer to submit these disputed issues to a foreign forum."* 417 F.2d at 235 (Emphasis added)

And in *Gray v. American Radiator & Standard Sanitary Corp., supra,* it was said:

> "Under modern doctrine the power of a State court to enter a binding judgment against one not served with process within the State depends [in essential part] upon . . . *whether he has certain minimum contacts with the State."* 22 Ill. 2d at 437. 176 N.E.2d at 763 (Emphasis added)

*See also Oliver v. American Motors Corp.,* 70 Wash. 2d 875, 425 P.2d 647 (1967); *cf. Jones Enterprises, Inc. v. Atlas Service Corp.,* 442 F.2d 1136 (9th Cir. 1971).

Whether the constitutional requirements of due process have been met depends upon the facts of the particular case.

*Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952). On the question of the sufficiency of the minimum contact necessary to validate the exercise of jurisdiction over the nonresident defendant, the following cases, by reason of statutory or jurisdictional affinity, merit our serious consideration: *Gray v. American Radiator & Standard Sanitary Corp., supra; Duple Motor Bodies, Ltd. v. Hollingsworth, supra; Jones Enterprises, Inc. v. Atlas Service Corp., supra;* and *Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972).

In *Gray,* a products liability case, the constitutional reach of the Illinois "long-arm" statute, after which the Hawaii statute was patterned, was in issue. There, a water heater safety valve manufactured in Ohio had been sold to a Pennsylvania manufacturer of water heaters. A hot water heater in which the safety valve was incorporated exploded and injured the consumer plaintiff in Illinois. Negligence on the part of the Ohio manufacturer in the construction of the safety valve was alleged. Suit was filed in Illinois and service was made upon the Ohio defendant pursuant to the Illinois "long-arm" statute. In holding that the minimum contact requirement had been met, the Illinois court recognized as a general proposition that it would not be unjust to hold a nonresident corporation, which elects to sell its products within the forum state, answerable for any injuries caused by defects in those products. The court further explained:

> "In the case at bar defendant does not claim that the present use of its product is an isolated instance. While the record does not disclose the volume of [Ohio defendant's] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves." 22 Ill. 2d at 441-442. 176 N.E.2d at 766.

*Duple Motor Bodies, Ltd. v. Hollingsworth, supra,* which was decided by the Ninth Circuit Court of Appeals, was also a products liability case. Suit was filed in the United States District Court for the District of Hawaii against a nonresident English manufacturer of coaches, for injuries sustained in Hawaii. The coach which was involved in the accident resulting in the injuries to the plaintiff, was originally ordered by a Hawaiian firm from Vauxhall, an English corporation licensed to conduct business within the State. Vauxhall in turn placed its order with Duple in England. The solicited work was performed wholly in England. Service upon the English manufacturer was made pursuant to Hawaii's "long-arm" statute. In holding that the presence of the coach body in Hawaii, brought about by the nonresident defendant's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with this State to meet the requirements of due process, the court of appeals stated:

> "We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade." 417 F.2d at 235.

*Jones Enterprises, Inc. v. Atlas Service Corp., supra,* also decided by the Ninth Circuit, was an action for breach of contract. An apartment building constructed in Alaska collapsed, allegedly the result of defective drawings and designs and the failure of the material supplied to conform to contract specifications. The alleged derelictions occurred before the defective products reached Alaska. The court of appeals held that the minimum contact requirement was met with respect to the nonresident architects who had prepared the alleged defective shop drawings and design calculations, because they knew that the ultimate destination of their work product

was Alaska. As in *Duple*, the court placed a great deal of emphasis upon the "stream of commerce" aspect of the situation before it:

"As was stated in *Duple*, when the activities complained of create a substantial risk of injury in the forum state, direct contact with that state is not essential. It is sufficient that, as here, the defendant sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state and that they create a potential risk of injury." 442 F.2d at 1140.

In *Wright v. Yackley, supra*, the Ninth Circuit had before it a situation virtually identical to that which we have been called upon to review. In that case the plaintiff was a resident of Idaho at the time suit was filed. The defendant physician resided and practiced medicine in South Dakota. As in this case, the defendant had examined the plaintiff and prescribed medication for her use. The court of appeals paraphrased the factual situation before it thusly:

"In our view . . . this does no more than put the doctor in the position of one who, in South Dakota, treats an Idaho resident with the knowledge of her imminent return to Idaho and that his treatment may thus cause effects there." 459 F.2d at 289.

The federal district court in Idaho had dismissed the resident plaintiff's suit for lack of jurisdiction over the nonresident defendant, who had been served pursuant to the Idaho "long-arm" statute. In affirming the judgment of the lower court, and in holding that assertion of jurisdiction over the South Dakota physician would be violative of the Due Process Clause of the Federal Constitution, the appeals court further commented:

"In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. . . . They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of

such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it." 459 F.2d at 289-290.

In distinguishing the product liability cases from the medical malpractice suit before it, the federal appeals court emphasized the localized nature of the average doctor's medical practice, pointing out that it was "[u]nlike a case involving voluntary, interstate economic activity, for example, which is directed at various states in order to benefit from effects sought in those states." 459 F.2d at 290. In the *Gray, Duple,* and *Jones* cases, *supra,* injuries were caused by products introduced into the stream of commerce by defendants whose primary interest was to benefit economically from their use in other states. Correspondingly, the forum states had an overriding interest in the protection of their citizens from injuries resulting from the use of these products.

The case before us is not one involving a defendant who introduces a defective product into the stream of commerce. Neither is it one involving an intentional tort, nor one where the act was performed for the purpose of causing an effect in Hawaii. Here there was only a chance encounter between a Hawaii resident visiting in Virginia and a physician who was engaged in a strictly localized medical practice.

We hold that under the circumstances of this case, the assertion of jurisdiction over the defendant Virginia physician would be violative of his rights under the Due Process Clause of the United States Constitution. Ordinary foreseeability principles of tort law are helpful but not determinative, for we are here concerned with constitutional principles of due process. Mere foreseeability of injury was not sufficient to establish the minimum contact necessary to satisfy the requirements of due process. *Wright v. Yackley, supra; Gelineau v. New York University Hospital,* 375 F.Supp. 661

(D.N.J. 1974). *See McAndrew v. Burnett,* 374 F.Supp. 460 (M.D.Penn. 1974).

*Gelineau v. New York University Hospital, supra,* involved a situation where a New Jersey resident, upon the recommendation of his local doctor, traveled to New York City to seek specialized treatment for his malady. Subsequent to his examination by a New York physician, he was admitted to New York University Hospital. The plaintiff's complaint alleged that as a result of the hospital's negligence in administering and furnishing him with suitable blood, he had contracted infectious hepatitis. Suit was filed against the New York hospital in federal district court in New Jersey and service of process was effected under the New Jersey "long-arm" statute. In holding that the minimum contact requirement had not been satisfied and that it would be manifestly unjust to exercise jurisdiction under the particular circumstances of that case, the federal court stated:

> "Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.
>
> "Such a rule [at the same time] would have a chilling effect on the availability of professional services to non-residents." 375 F.Supp. at 667.

It would also seem to us fundamentally unfair and offensive to all traditional notions of fair play and substantial justice to compel the Virginia physician in this case to defend against a suit in the courts of Hawaii, simply by reason of an isolated encounter in Virginia with a resident of Hawaii. Minimum contact under the Due Process Clause of the Federal Constitution requires something more than the fortuitous circumstance of a visiting Hawaii resident finding herself in need of, and soliciting the services of a local practitioner in that State.

Affirmed.

*Jack C. Morse (Saunders & Morse* of counsel) for plaintiff-appellant.

*William H. Dodd (Chun, Kerr & Dodd* of counsel) for defendant-appellee.

DISSENTING OPINION OF RICHARDSON, C.J.
WITH WHOM SODETANI, CIRCUIT JUDGE, JOINS

I concur in the court's holding that for the purpose of determining jurisdiction under Hawaii's statute, a tort is committed where the injury occurs, and the phrase "tortious act" in HRS § 634-71(a)(2) encompasses the injurious consequences of an act.

I respectfully dissent from the court's holding that the assertion of jurisdiction by Hawaii in this case would be a denial of constitutional due process of law.

In analyzing the due process requirements controlling state court jurisdiction over nonresident defendants, the basic consideration is fairness, and concern focuses not on where it is most desirable to bring suit but on whether minimum requirements of fairness are met. *Hanson v. Denckla,* 357 U.S. 235, 251, 254 (1958); Kurland, *The Supreme Court and In Personam Jurisdiction of State Courts,* 25 U. Chi. L. Rev. 569; 620-621 (1958).

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945), remains the foundation of modern due process analysis of state court in personam jurisdiction over nonresidents. In that case the Court stated that a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316. The Court advocated a case-by-case analysis in examining "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. 310, 319.

Some later cases and commentaries propose different approaches and formulations of when jurisdiction is proper,

but fundamentally they attempt to determine when the assertion of state court jurisdiction is fair.[1] The trend of later cases has been to enlarge the constitutional scope of state court jurisdiction,[2] and some state statutes have followed that expansion by broadening jurisdiction to the constitutionally permissible limits. *Gray v. American Standard Radiator, supra*. On the other hand, *Hanson v. Denckla, supra*, 357 U.S. 235 (1958), limits the scope of that expansion by admonishing that, "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws." 357 U.S. at 253.

Turning toward specifics, we note that not only do *Gray* and *Duple Motor Bodies*, the product liability cases discussed above in which the only contact with the forum state is the injurious consequence of the alleged negligence, fall within

---

[1] Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (1965); Buckley v. New York Times Co., 338 F.2d 470 (5th Cir. 1964); Tyee Construction Co. v. Dulien Steel Products, Inc., 62 Wash. 2d 106, 381 P.2d 245, 251 (1963); Gray v. American Radiator and Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961); Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966); Viernes v. Dist. Ct., 4th Jud. Dist., 509 P.2d 306 (1973).

Carrington & Martin, *Substantive Interests and the Jurisdiction of State Courts*, 66 MICH. L. REV. 227 (1967); Comment, *Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness*, 69 MICH. L. REV. 300 (1970); Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U. ILL. L. F. 533 (1963); *Developments in the Law – State Court Jurisdiction*, 73 HARV. L. REV. 909 (1960); Hazard, *A General Theory of State Court Jurisdiction*, 1965 Sup. Ct. Rev. 241; Von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121 (1966); Leflar, *American Conflicts Law* 72 (1968); *Restatement 2d, Conflict of Laws*, §§ 24, 27, 37.

[2] United States Supreme Court: Travelers Health Ass'n v. Virginia ex rel. State Corp. Commn., 339 U.S. 643 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952); McGee v. International Life Ins. Co., 355 U.S. 220 (1957).

For some review of cases, *see* Comment, *Long-Arm and Quasi in Rem Jurisdiction, supra*, note 5, *Developments in the Law, supra*, note 5; Currie, *supra*, note 5, Kurland, *The Supreme Court, The Due Process Clause and In Personam Jurisdiction of State Courts*, 25 U. CHI. L. REV. 569 (1958); Reese & Galston, *Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction*, 44 IOWA L. REV. 249 (1959); 24 A.L.R.3d 532 at 541; 2 Moore, *Federal Practice* ¶ 4.25[3], [4].

the relevant statutory provisions, but the assertion of jurisdiction in those cases has been held to comply with the constitutional requirements of due process. *Gray v. American Radiator, supra; Duple Motor Bodies, Ltd. v. Hollingsworth, supra*. There is no general distinction between product liability and malpractice cases for the purposes of due process analysis. *Compare Duple Motor Bodies, supra,* and *Jones Enterprises v. Atlas Service Corp.*, 442 F.2d 1136 (9th Cir. 1971). Certainly there is no general distinction between the possible severities of injuries. Fatality from an auto accident may result from either defectively made brakes or improperly prescribed drugs. Nor can it be said that the consequences of negligence differ in foreseeability with the type of tort. Neither are the number of contacts required for due process different; a single contact may suffice. *Compare Duple Motor Bodies, supra* with *Jones Enterprises, supra*. Defendant-appellee, however, argues that *Duple* and *Jones, supra,* are distinguishable while *Wright v. Yackley*, 459 F.2d 287 (1972) is on point and compels affirmance of the trial court.

In *Wright v. Yackley, supra,* a South Dakota physician treated and prescribed medicine for a South Dakota resident. The patient moved to Idaho and four months after her last treatment sought to have the prescription refilled in Idaho, at which time the druggist sought confirmation of the prescription. The patient wrote to her doctor for said confirmation, and on this request and without charge the doctor mailed copies of the prescription from South Dakota to Idaho. The druggist was satisfied, filled the prescription, and the plaintiff alleged she was ultimately injured by the use of the prescribed drugs.

The Ninth Circuit Court of Appeals affirmed the district court judgment that Idaho could not exercise jurisdiction over the nonresident defendant doctor consistently with the constitutional requirement of due process of law. The appeals court stressed that in the personal service case focus must be on the place where the services are rendered, since this was thought to be the place of the receiver's need. The court then enumerated three factors which made jurisdiction "un-

reasonable.'' First, there was "no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state.'' 459 F.2d at 290. Second, the nature of the contact with the forum was said to be "normally grounded outside any relationship with the forum state . . . residence of a recipient in the forum is irrelevant and incidental to the benefits provided by the defendant in his location.'' Third, the dominant state interest was found in its citizens' free access to medical care when they travel out of state. 459 F.2d at 290-291.

The first argument about the number of contacts is puzzling in light of cases holding that a single contact may suffice to establish jurisdiction when the cause of action arises from the contact. See *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), and the Ninth Circuit's own cases, *Duple Motor Bodies*, and *Jones Enterprises, supra*. In the latter two cases contact was not continuing and systematic.

The third point suggests an examination of all the interests involved. In this case the plaintiff and defendant are both individuals and have similar interests in the costs and inconveniences of litigating in a foreign state; neither is a corporation with vast financial resources. Hawaii has several interests: an interest in the availability of medical services for its travelling citizens, an interest in securing redress for its citizens injured within its borders, and an interest in interpreting its own substantive law. The State interest in interpretation arises because the place of the injury governs the substantive tort law, especially when the plaintiff is also a domiciliary in the state where he was injured, *Restatement 2d, Conflicts* § 146. We cannot say from observing this constellation of interests that exerting jurisdiction would be unreasonable or unfair as a matter of constitutional law. If the legislature believes that the availability of medical services to travelling Hawaii citizens is indeed the "dominant state interest,'' then it retains the power to amend HRS § 634-71.

The constitutional issue narrows to the reasonableness or fairness of jurisdiction in light of the nature and quality of the nonresident defendant's contacts with the forum state.

The Ninth Circuit has stated that "the existence of an effect in the forum state, cannot, without more, subject its cause to *in personam* jurisdiction in that state," but has added that "very little indeed in addition to impact in the state is required to satisfy due process." *Jones Enterprises, Inc. v. Atlas Service Corp., supra,* 442 F.2d 1136, 1139 (9th Cir. 1971). In *Duple Motor Bodies* and *Jones Enterprises, supra,* "something more" was found. *Wright v. Yackley, supra,* refers to those cases in terms of "voluntary interstate economic activity . . . which is directed at various states in order to benefit from effects sought in those states." 459 F.2d at 290. In *Wright v. Yackley, supra,* however, foreseeability was the only element in addition to the effect of the act in the forum state, and the Ninth Circuit rejected foreseeability as a sufficient addition. See note 4, 459 F.2d at 289.

For the Ninth Circuit voluntary interstate benefit-seeking satisfies the requirement of *Hanson v. Denckla, supra,* 357 U.S. at 253, that the defendant "purposefully avails itself of the privilege of conducting activities within the forum state." As was stated in *Jones Enterprises, supra,* "the extent of purposeful submission to the laws of the forum state necessary to satisfy this requirement, however, depends upon the nature of the activity giving rise to the suit." 442 F.2d 1140. Inspection of the Ninth Circuit's own cases, *Duple Motor Bodies* and *Jones Enterprises, supra,* and of *Gray v. American Radiator, supra,* reveals *very* tenuous "purposeful submission." In *Duple* and *Jones* the defendants clearly knew where their respective product or service was going, but the incorporation of the product or service into the products which were actually sent into the forum state occurred outside the forum state. In *Gray* the same incorporation situation occurred but without any showing that the nonresident defendant actually foresaw the eventual destination; instead, the court found that the defendant could reasonably have foreseen the eventual destination of the larger product in which its own product was incorporated. 176 N.E.2d 761, 766. The constitutionality of personal jurisdiction based on such tenuous connections undermines the strict application of *Hanson v. Denckla* in interstate tort cases (especially since *Han-*

*son* was not a tort case), and *Hanson* has been directly attacked in the product liability context, *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 256, 413 P.2d 732, 735 (1966).[3] Similarly, our own reliance on *Hanson* in *Gordon v. Granstedt*, 54 Haw. 597, 513 P.2d 165 (1973), is distinguishable because *Gordon* was not a tort case either.

"Voluntary interstate economic activity" thus appears more important as an element of fairness than as an item to satisfy *Hanson v. Denckla, supra*.[4] While the intent to benefit from the foreign consequences of one's acts certainly makes jurisdiction by the foreign state fairer, especially when the acts are designed to produce the foreign consequences, we cannot say that such jurisdiction is unfair when there is no intent to benefit but the foreign consequences are nonetheless foreseeable. First, there is no argument that jurisdiction is improper if harmful consequences of an act are intended to be felt across state lines. The intentional firing of a bullet across a state line is a classic example. Leflar, *American Conflicts Law* 81 (1968). How much should it matter that the gun is negligently discharged? *International Shoe* reminds us to approach each case on its own facts, and our case involves the foreseeable use and consequences of drugs. Drugs are commonly recognized as containing considerable potential for harm, as well as for good, and unlike other products, drugs are totally beyond the power of the ordinary consumer to evaluate before using.[5] Accordingly, both our national and state governments have legislated in several areas involving the quality, use, and handling of drugs. For example, HRS Chapters 328 and 329, Act 9, S.L.H. 1972 Ch. 12, Part IV. The nature of the item or service involved in the

---

[3] *Hanson* has been criticized on other grounds. Hazard, *A General Theory of State-Court Jurisdiction*, 1965 Sup. Ct. Rev. 241, 244 (1965).

[4] Keckler v. Brookwood Country Club, 248 F. Supp. 645, 649, clearly advances interstate commerce as the critical item of fairness.

[5] Commentary, *Conflict of Laws — Long Arm Jurisdiction — Mailing of Prescriptions Into Forum State Does Not Confer In Personam Jurisdiction Over Doctor in Another State*, 24 Ala. L. Rev. 634, 644 (1972).

interstate contact definitely is a factor in evaluating the nature and quality of the defendant's contact with the forum state. Second, the commercial contexts of product liability cases and the analyses dealing with the "doing business" provisions of long-arm statutes do not automatically control noncommercial cases.

While it definitely seems fair that one who seeks benefit from his or her contact with a foreign state should also bear the risks of that contact, it is equally well established that one of the major purposes of tort law, especially in the field of negligence, is to compensate injured parties for the wrongs of others, *Restatement 2d, Conflicts* § 146, pp. 432-3, and this too is considered eminently fair. That purpose is augmented in this case by Hawaii's strong interest in providing redress for its own citizen who had absolutely no contact with the defendant's state and yet was injured within the forum state,[6] and by the state's interest in interpreting its own substantive tort law. The point is not to confuse substantive tort law with jurisdictional law, but the purposes of the substantive law do influence jurisdictional considerations. *Curtis Publishing Co. v. Birdsong*, 360 F.2d 344 (5th Cir. 1966); *Viernes v. Dist. Ct., 4th Jud. Dist., supra,* 509 P.2d 306 (1973). See *Restatement 2d, Conflicts* § 36, Comment c; 37 Comment a, which indicates that the reasonableness of jurisdiction depends partly on the state's interests. The purposes of substantive law are definitely among a state's interests. And see also Carrington & Martin, *supra,* note 5.

If the defendant may be expected to answer for his negligence when the consequences of his act are geographically remote, then in certain cases he may be expected to answer for that negligence *where* the injury occurs. I hold that this is such a case.

I would reverse the decision of the trial court.

---

[6] For discussion of the plaintiff's and defendant's relative scopes of geographical activity as an element of fariness, *see* Von Mehren and Trautman, *supra,* note 5.