**PURE, LTD., a Hawaii corporation, Plaintiff,**

v.

**SHASTA BEVERAGES, INC., a Delaware Corporation, and National Beverage Corp., a Delaware Corporation, Defendants.**

Civ. No. 88–00101.

United States District Court, D. Hawaii.

July 29, 1988.

William M. Swope, Darryl H.W. Johnston, David Schulmeister and Colin O. Miwa, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for plaintiff.

William McCorriston and Bryan Yee, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, Robert Jossen and Walter Siegel, Sheriff, Friedman, Hoffman & Goodman, New York City, for defendants.

## ORDER DENYING DEFENDANT NATIONAL BEVERAGE CORP.'S MOTION TO DISMISS

KAY, District Judge.

This matter came on for hearing on May 16, 1988, upon Defendant National Beverage Corp.'s Motion to Dismiss. William C. McCorriston and Mark E. Recktenwald appeared for defendant Shasta Beverages, Inc. ("Shasta") and defendant-movant National Beverage Corp. ("National"). David Schulmeister and William M. Swope appeared for Plaintiff, Pure, Ltd. ("Pure"). The court, having examined the motions, the memoranda filed in support and in opposition thereto, and having heard the arguments of counsel hereby finds as follows.

### I.

Shasta, a Delaware corporation whose primary place of business is Hayward, California, is a wholly-owned subsidiary of National. National's headquarters is in Fort Lauderdale, Florida. Pure is a Hawaii corporation with its assets and principal place of business in Hawaii. Shasta and Pure originally entered into negotiations regarding the distribution of Pure's product "Hawaiian Water" mineral water in California and potentially national distribution. Subsequently, Shasta and Pure entered into a distribution agreement for "Hawaiian Water" on September 19, 1986. Part of that

agreement called for a marketing plan to be prepared and delivered to Pure by Shasta by December 19, 1986. According to the affidavit of Marcus Bender, shortly after the September 19, 1986 contract was signed, the Shasta management changed. The Vice President of National, Mr. Smith, also became an executive officer of Shasta. In addition, Mr. Healy became Chief Executive Officer of National and assumed a similar dual role with regard to Shasta. Pure alleges that Mr. Smith told Pure that all decisions regarding the contract must be approved by the Board of Directors of National.

The complaint alleges that Shasta did not provide a marketing plan by December 19, 1986. However, in the interim an Addendum Agreement was signed by the parties on October 9, 1986. Amendment No. 2 was executed on February 20, 1987 amending and modifying the September 19, 1986 contract (hereinafter collectively referred to as "Agreement").

On April 28, 1987, apparently in furtherance of the business relationship and pursuant to the Agreement, the parties, including Mr. Healy and Mr. Smith for National and Shasta, met to discuss a quality testing report and a marketing plan for "Hawaiian Water" provided for in the Agreement. In the morning session of discussions on April 28, 1987 the parties allegedly agreed that a California rollout would commence in the near future. However, in the afternoon session, Mr. Healy and Mr. Smith allegedly wanted to rescind the California rollout unless defendant Pure agreed to renegotiate the Agreement. The renegotiation terms included Shasta's acquisition of a 51% interest in Pure and a subsequent 100% interest after a set threshold of royalties were received by Pure, in addition to the agreement being terminable at any time by Shasta at its sole discretion.

Pure subsequently filed suit in February 1988. Defendant National has brought this motion to dismiss based upon this court's alleged lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and Pure's failure to state a claim for which relief may be granted under Fed.R.Civ.P. 12(b)(6).

## II.

Pure states in Count I of its complaint that it detrimentally relied upon the signed contract and proceeded to drill a well and contract for special flexible tanks to ship the water to California. Pure states that it has spent or contracted for a sum in excess of $1,200,000.00 to fulfill its obligations under the Agreement. Accordingly, Pure claims breach and wrongful repudiation of the agreement by National and Shasta.

Count II alleges that National wrongly caused, induced or directed Shasta's breach and repudiation of the agreement with an intent to interfere and lessen Pure's contractual rights. Accordingly, Pure claims that National intentionally interfered with Pure's contractual rights.

Count III alleges that the wrongful repudiation of the Agreement was motivated by predatory and bad faith intent by Shasta and National to misappropriate the contractual rights of Pure under the agreement. Accordingly, Pure seeks punitive damages.

Count IV alleges that the above conduct constituted a breach by Shasta of the covenant of good faith and fair dealing implied in every contract and accordingly seeks damages for the breach of the covenants of good faith and fair dealing.

National brings this motion to dismiss on the basis that plaintiff has failed to allege that National had sufficient contacts to Hawaii to subject it to the jurisdiction of this court. In addition, National alleges that plaintiff has failed to state a claim against National for which relief can be granted. National alleges in its moving papers that Pure has claims against National in only Counts II and III of the complaint and National therefore only addresses its arguments to dismiss based upon Counts II and III. However, upon review of the complaint by the court, Count I specifically names National in Pures' claim of breach of contract. Because National has not addressed the breach of contract claims against National in its moving papers, the court will only review Counts II and III for purposes of National's motion to dismiss.

### Personal Jurisdiction

■ Defendant National asserts that plaintiff has failed to satisfy its burden of alleging that National has sufficient contacts with the State of Hawaii sufficient to subject it to the jurisdiction of this court. *FDIC v. British–American Insur. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir.1987). In scrutinizing a motion to dismiss based upon lack of personal jurisdiction, the court looks to the uncontroverted allegations of the complaint, affidavits and depositions. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330 (5th Cir.1986). For purposes of its motion to dismiss for lack of personal jurisdiction only, National has not contested the allegations of the complaint.

In this diversity suit, personal jurisdiction is alleged over National, a foreign corporation, based on Hawaii's long-arm statute, Haw.Rev.Stat. § 634–35(a). Plaintiff contends that § 634–35(a)(2) provides for jurisdiction when there is a "commission of a tortious act within this State." Hawaii's long-arm statute, Haw.Rev.Stat. § 634–35, provides in pertinent part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:
>
> \* \* \* \* \* \*
>
> (2) the commission of a tortious act within this State;

National asserts that the allegations of the complaint are insufficient to bring National within reach of the Hawaii long-arm statute, Haw.Rev.Stat. § 634–35. National also argues that, even if the allegations of the complaint are construed to be sufficient to invoke Haw.Rev.Stat. § 634–35, that the complaint nevertheless fails to allege sufficient "minimum contacts" between National and the State of Hawaii to satisfy the due process limitations imposed by the Fourteenth Amendment of the United States Constitution upon a State's exercise of personal jurisdiction over non-residents.

The Supreme Court of Hawaii has determined that a tortious act is committed within the State of Hawaii under Haw.Rev.Stat. § 634–35(a)(2) if the injury, or the injurious consequences of the allegedly tortious act, occurs within the state. *Kailieha v. Hayes*, 56 Haw. 306, 536 P.2d 568 (1975); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231, 233 (9th Cir.1969).

National has cited decisions based upon construction of the tortious act clause of the Illinois long-arm statute upon which Haw.Rev.Stat. § 634–35 was originally modelled. *See, e.g., Turnock v. Cope*, 816 F.2d 332 (7th Cir.1987). However, the Supreme Court of Illinois in the 1981 case of *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981) limited the reach of the Illinois long-arm statute thereby diverging from Hawaii's interpretation and construction of its long-arm statute, which is more expansive, extending jurisdiction of the State's courts to the extent permitted by the due process clause of the Fourteenth Amendment. *Cowen v. First Insurance Company of Hawaii, Ltd.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980); *Kailieha v. Hayes, supra.*

■ The complaint alleges interference by National with the Agreement between Shasta and Pure which has allegedly resulted in economic injuries to Pure. These economic injuries include damages and expenditures it incurred in Hawaii by drilling a water well on the Island of Hawaii, contracting for flexible tanks to transport the water from the Island of Hawaii to Shasta's continental U.S. bottling facilities, design of the labels and containers for the products to have been bottled and sold by Shasta under the Agreement, and the loss of royalty payments that it would have received in Hawaii had Shasta performed. The complaint alleges that Pure's injury occurred in Hawaii, as the result of National's alleged tortious acts. Therefore, the court finds that Pure has alleged tortious acts by National, which for the purposes of this motion National does not contest, suf-

ficient to subject National to the jurisdiction of this court pursuant to Haw.Rev. Stat. § 634–35(a)(2).

 National further contends that the due process clause of the Fourteenth Amendment prohibits this court's exercise of personal jurisdiction over it because sufficient "minimum contacts" have not been alleged by Pure. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court discussed the factors necessary to expose a defendant to suit in the subject forum. The Supreme Court stated that due process requires "fair warning" that a defendant's conduct might subject it to suit in another jurisdiction. Fair warning exists, the Court indicated, where the defendant has "purposefully directed" his activities at residents of a foreign forum, and litigation results from alleged injuries that arise out of or relate to those activities. 471 U.S. at 472, 105 S.Ct. at 2181. The determination is whether the defendant's conduct and connection with the forum State are such that it (the defendant) should reasonably anticipate being haled into court there. The Court stated:

> We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a non-resident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out of state actors.

*Id.* at 473, 105 S.Ct. at 2182 (cites omitted). It is not necessary for a defendant to physically enter the forum State in order for sufficient "conduct and connection" to exist. The Court stated,

> [i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of phys-

ical contacts can defeat personal jurisdiction there.

*Id.* at 476, 105 S.Ct. at 2184 (cites omitted). The Court specifically noted that, with respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state, are subject to sanctions and regulations in the forum state for the consequences of their activities. *Id.*

National's Rule 12(b)(2) motion to dismiss therefore is determined by whether Pure has alleged or adduced sufficient facts demonstrating that National engaged in purposeful activities directed at residents of this forum and that this litigation results from alleged injuries that arise out of or relate to those activities. In the instant case, National is alleged to have knowingly and intentionally interfered with Pure's contract with Shasta, a contract that has, on its face, substantial connections with Hawaii. The Agreement is between Shasta and Pure, a Hawaii corporation with its principal place of business in Hawaii. The Agreement provides for the shipment of Hawaiian water from Hawaii to Shasta's continental U.S. bottling facilities. The Agreement further provides that it is to be governed by the laws of Hawaii. All of these facts relating to the Agreement are alleged to have been known by National when National interfered with Pure's rights under the Agreement. National's alleged interference with a Hawaii interest weighs heavily in favor of permitting Hawaii's courts to exercise personal jurisdiction over National.

A Kansas district court upheld personal jurisdiction in a similar tortious interference with contract case in *Cal Caulfield and Co. v. Colonial Nursing Homes*, 642 F.Supp. 777 (D.Kan.1986). The *Caulfield* court found that a non-resident defendant who tortiously interfered with the contract rights of a forum resident with the intent to directly affect the interests of the plaintiff in the forum state could reasonably have anticipated being haled into the forum state's court. The *Caulfield* court stated,

Based upon plaintiff's version of the facts, we find that [defendants] purposefully directed their activities at plaintiff ... when they intentionally sought to interfere with the contract. Surely, defendants could foresee that their tortious acts would cause injury to a Kansas resident in Kansas and that they could anticipate being sued in Kansas for their conduct....

The rationale of *Caulfield* appears appropriate in the instant case. Pure contends that National purposefully directed its activities towards Pure which caused it to suffer injury in Hawaii. Plaintiff has submitted affidavits and correspondence which indicate that National had some measure of control over Shasta's actions which led to the breach, and that National was a party to the negotiations that led to the breach. Some of the correspondence and other documentation is either signed by or has notations on it by National personnel. Importantly, there is mail which went from National to Pure in Hawaii on June 11, 1987, which strongly indicates National's purposeful direction of activities towards Pure. *See Club Assistance Program v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984).

While defendant disputes personal jurisdiction, it does not allege that this court's extension of personal jurisdiction would not comport with fair play and substantial justice. The Supreme Court stated in *Burger King,* that a defendant who has purposefully directed his activities at a forum resident, yet seeks to defeat personal jurisdiction, must present a compelling case that other considerations would render jurisdiction unreasonable. *Id.* 471 U.S. at 477, 105 S.Ct. at 2184.

This court finds that National's conduct as alleged is sufficient to justify personal jurisdiction over National. Accepting the alleged facts as true, National's interference with Pure's contract rights, or as a party to the contract governed by Hawaii law, makes it reasonable for National to reasonably expect it to be haled into court in Hawaii.

### Failure to State a Claim

■ Defendant has also moved to dismiss on the basis that plaintiff has failed to state a claim against National under Fed.R. Civ.P. 12(b)(6). The applicable standard for a motion to dismiss is whether the plaintiff can prove no set of facts in support of his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980). All that must be contained in the complaint is a "short and plain statement of the claim that will give [the defendant] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, Id.,* 355 U.S. at 47, 78 S.Ct. at 103.

■ National asserts that there is no allegation that National participated in, or actively brought about or induced a breach of the alleged Agreement between Pure and Shasta. However, Pure does allege that National, with the intent to interefere, caused, induced or directed Shasta to breach the Agreement. Furthermore, intent is properly averred generally. Given the averred facts in the complaint and the permissible inferences therefrom the plaintiff has stated a case for intentional interference of contract. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (all permissible inferences must be construed in favor of plaintiff).

Pure has stated a claim sufficient to withstand a 12(b)(6) motion to dismiss. Defendants argument that National could not have induced a breach of an already breached contract is untenable. The Agreement, comprised of the September contract, the Addendum Agreement and Amendment No. 2 may have been a valid contract continuing in force and capable of interference by National.

National also asserts that any interference by National in the contract between its subsidiary and another party would be privileged as a matter of law. In support, the defendant cites *Green v. Interstate United Management Serv. Corp.,* 748 F.2d 827 (3d Cir.1984). *Interstate Management* states,

**1280**

the second Restatement ... eschews the concept of privilege to interfere in favor of a case-by-case inquiry as to whether the alleged interference is improper. To decide whether interference in a given case is proper, the court must examine a number of factors and determine "whether, upon consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another." *Id.* at 831, *citing* Restatement (Second) of Torts, § 767 comment b. In the instant case, the court must determine whether the plaintiff could prove no set of facts supporting his claim of intentional interference in order to dismiss the claim. In this case, plaintiff's complaint alleges an improper predatory motive by National to misappropriate the contractual rights of Pure in Count III. *See Bendix Corp. v. Adams*, 610 P.2d 24, 31 (Alaska 1980) ("where there is a direct financial interest in a contract, the essential question in determining if interference is justified is whether the person's conduct is motivated by a desire to protect his economic interest, or whether it is motivated by spite, malice, or some other improper objective.").

The motion to dismiss is properly denied as it is possible that Pure could prove a set of facts in support of its claim of intentional interference of contract against National. National may assert a business privilege, however, the privilege is dependent on National's motive which is properly left for further proceedings. Therefore, National's Motion to Dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) regarding intentional interference with contract is denied.

### III.

Under the Hawaii long-arm statute regarding tortious acts and the U.S. Supreme Court case of *Burger King*, this court has personal jurisdiction over National. In addition, the court finds that plaintiff has properly alleged a cause of action for intentional interference of contract against National. Accordingly, IT IS HEREBY OR-

DERED that defendant National's Motion to Dismiss is DENIED.