74 P.3d 26

**Charlotte J. NORRIS, Plaintiff–Appellant,**

v.

**SIX FLAGS THEME PARKS, INC. and Six Flags at Magic Mountain, Defendants–Appellees,**

and

**Doe Entities 1–10, Defendants.**

No. 24072.

Supreme Court of Hawai'i.

Aug. 7, 2003.

As Corrected Aug. 12, 2003.

Michael G.M. Ostendorp, on the briefs, Honolulu, for plaintiff-appellant.

Paul T. Yamamura, Honolulu, Lila Barbara Kanae, and Wesley D. Shimazu (Kanae & Yamamura), on the briefs, for defendants-appellees.

LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge AUGUST, assigned by reason of vacancy; with MOON, C.J. concurring separately.

Opinion of the Court by ACOBA, J.

We hold that (1) trial courts must determine the question of jurisdiction before deciding other dispositional matters such as a statute of limitations defense and (2) personal jurisdiction was lacking over Defendants–Appellees Six Flags Theme Parks, Inc. and Six Flags at Magic Mountain (Defendants) in

this case under Hawaiʻi Revised Statutes (HRS) §§ 634–35(a)(1) and (2) (1993) of Hawaii's long arm statute. Defendants' activities in this State essentially amounted to advertising in a magazine and on an internet website. We conclude that such activity did not confer jurisdiction over the claims for relief of Plaintiff–Appellant Charlotte J. Norris (Plaintiff) under the facts of this case. Accordingly, we vacate the January 4, 2001 order of the first circuit court[1] (the court) dismissing Plaintiff's action against Defendants on statute of limitations grounds, and the court's judgment entered on January 11, 2003, and remand to the court to enter an order dismissing Plaintiff's complaint against Defendants for lack of personal jurisdiction.

## I.

Plaintiff filed her first complaint for personal injury on July 12, 2000, and an amended complaint on August 4, 2000 against Defendants, alleging that: (1) Plaintiff was a resident of Hawaiʻi; (2) Defendants conducted business in Hawaiʻi; (3) between May 30, 1998 and June 2, 1998, Plaintiff was a patron of Defendants' amusement park in California, during which time she rode a roller coaster known as the "Viper" and suffered "a severe headache"; (4) upon her return to Hawaiʻi on June 3, 1998, Plaintiff suffered various symptoms and was admitted to a hospital; (5) on July 10, 1998, a subdural hematoma was removed from Plaintiff's cranium; (6) on or about July 16, 1998, Plaintiff's surgeon opined that the injury was caused by Plaintiff's ride on the Viper; (7) Plaintiff's injuries and damages occurred in Hawaiʻi; and (8) the court had jurisdiction over Defendants pursuant to Hawaii's long-arm statute, HRS § 634–35 (1993).[2] Plaintiff filed seven claims for relief, including negligence, common carrier liability, strict liability, implied warranties, negligent design and construction, and battery.

On September 21, 2000, Defendants filed a motion to dismiss pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rules 12(b)(2) and 12(b)(5).[3] Defendants' motion asserted, *inter alia*, that Defendants lacked the requisite minimum contacts with Hawaiʻi to establish personal jurisdiction under HRS § 634–35. Defendants contended that they "do not maintain offices in Hawaiʻi, are not registered to do business in Hawaiʻi, do not have an agent for service of process in Hawaiʻi, have not committed a tortious act within the State of Hawaiʻi and have not contracted to insure any person or property within the state." Defendants also asserted that Plaintiff's claims were barred by the statute of limitations pertaining to injury to persons

---

**1.** The Honorable Virginia Lea Crandall presided over this matter.

**2.** HRS § 634–35 states:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this state;

(4) Contracting to insure any person, property, or risk located within this State at the time of contracting.

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made as provided by section 634–36, if the person cannot be found in the State, with the same force and effect as though summons had been personally served within this State.

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

(d) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law.

**3.** HRCP Rule 12(b)(2) and (5) read:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: .. (2) *lack of jurisdiction over the person*, ... (5) *insufficiency of service of process* ....

(Emphases added.) Although Rule 12(b)(5) was raised in Defendants' motion to dismiss, the court's order granting the motion did not rule on the issue.

and property, HRS § 657–7 (1993).[4]

On October 10, 2000, Plaintiff filed her memorandum opposing dismissal, arguing that Plaintiff's claims for relief accrued on July 16, 1998, when she was notified of the cause of the hematoma by her physician, Defendants' contacts were established through advertising in publications distributed in Hawai'i, business activity with Hawai'i travel agents, and sales of tickets through Defendants' Internet website,[5] and a continuance was necessary to conduct discovery on the matter of jurisdiction. Plaintiff filed supplemental submissions on November 14 and 15, 2000, providing evidence that Defendants offered discounts to members of the Hawai'i State Bar Association (HSBA), and supplied theme park brochures to at least one Hawai'i travel agency.

Plaintiff and Defendants subsequently filed various reply and supplemental memoranda regarding personal jurisdiction over Defendants and the statute of limitations. Among other things, on November 6, 2000, Plaintiff filed a motion to compel answers to written interrogatories that she served on Defendants on October 11, 2000. This motion requested Defendants to supply information regarding business entities held by Defendants, publications used for advertising, contacts and bookings with travel agents doing business in Hawai'i, web site "hits" and online ticket sales, and miscellaneous business contacts with this State. The interrogatories

were not answered by Defendants, who claimed that (1) pursuant to HRCP Rule 33,[6] interrogatories cannot be served without proper service of the first amended complaint and summons; and (2) the interrogatories, even if answered, would not cure the defects in Plaintiff's jurisdictional claim.

On December 6, 2000, the court issued orders denying Plaintiff's motions to compel written interrogatories and to continue hearing. The orders did not provide details on the court's reasoning. On January 4, 2001, the court entered an order granting the motion to dismiss on the ground that the statute of limitations had run:

IT IS HEREBY ORDERED, ADJUDGED, [AND] DECREED that said motion hereby [sic] granted.

At the latest, the statute of limitations began to run on July 9, 1998 and the Complaint was filed on July 12, 2000 and therefore the two year statute of limitations applies and bars all claims brought by Plaintiff.

Judgment was entered in favor of Defendants on January 11, 2001. The court did not determine whether it had personal jurisdiction over Defendants to hear the matter.

## II.

On appeal, Plaintiff maintains that the court erred in granting judgment to Defendants on the ground that the statute of limitations had run on July 9, 1998. Plaintiff

---

**4.** HRS § 657–7 mandates:

Actions for the recovery of compensation for damage or injury to persons or property shall be instituted *within two years after the cause of action has accrued,* and not after, except as provided in section 657–13.

(Emphasis added.)

**5.** The Internet and "websites" have been described as follows:

The *Internet* is a global network of interconnected computers that allows individuals and organizations around the world to communicate and to share information with one another. The Web [is] a collection of information resources contained in documents located on individual computers around the world.... Prevalent on the Web are multimedia *"websites."* A website consists of at least one, and often many interconnected, "web pages." Web pages are computer data files ... that contain information such as text, pictures,

sounds, and audio and video recordings. Web pages also usually contain connections ("hyperlinks") to other pages on the website and other websites altogether.

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 690–91 (6th Cir.2003) (citations omitted) (emphases added).

**6.** HRCP Rule 33(a) reads, in pertinent part, that

[a]ny party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party. *Interrogatories may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.*

(Emphasis added.)

asserts, *inter alia*, that the filing of the complaint on July 12, 2000 fell within the limitations period. According to Plaintiff, this is a material issue of fact that precludes what in effect was summary judgment.

Plaintiff also maintains that, even if the court's order is not viewed as one of summary judgment, Defendants' motion to dismiss under HRCP Rules 12(b)(2) and 12(b)(5) should be viewed as a motion under HRCP Rule 12(b)(1) for lack of subject matter jurisdiction or, under 12(b)(6), for failure to state a claim upon which relief may be granted,[7] and dismissal under either would be improper. Third, Plaintiff argues that her breach of implied warranties claim is governed by HRS § 657-1(1) (1993), with a six-year statute of limitations.

In response, Defendants maintain that Plaintiff's breach-of-warranty claim is inapplicable under State law, Plaintiff knew or should have known of her claims for relief on or before July 9, 1998, and, hence, the two-year limitations period had run before Plaintiff filed her complaint on July 12, 2000, and the court lacked personal jurisdiction over Defendants.

In her reply brief, Plaintiff notes, further, that her motion to compel answers to written interrogatories, denied by the court, would have supported her jurisdictional claim.

### III.

While we do not address the merits of the court's statute of limitations ruling, we observe that the moment at which a statute of limitations is triggered is ordinarily a question of fact. *See Blair v. Ing*, 95 Hawai'i 247, 267, 21 P.3d 452, 472 (2001) ("[I]f the [plaintiffs] succeed in proving that [the defendant] owed a duty of care to them, ... the trier of fact must determine the date by which the [plaintiffs] knew or should have known of their ... claim." (Citation omitted.)); *Dunlea v. Dappen*, 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996) (holding that "the

issue of when [the plaintiff] discovered, or should have discovered, that her alleged injuries were caused by [the defendant]'s alleged actions is a question of fact for the jury," and thus, the supreme court "[could not] hold as a matter of law that [the plaintiff] ascertained her alleged injuries and their causal link to [the defendant's] alleged actions more than two years before she asserted her claim, or that her failure to recognize her alleged injuries and the cause of those injuries sooner was unreasonable").

In any event, we believe the jurisdiction question must be decided before the merits of the statute of limitations defense. *See In re Water Use Permit Applications*, 94 Hawai'i 97, 119 n. 15, 9 P.3d 409, 431 n. 15 (2000) ("As a threshold matter, we note that we have jurisdiction to entertain this appeal.") (citations omitted); *Akinaka v. Disciplinary Bd.*, 91 Hawai'i 51, 60, 979 P.2d 1077, 1086 (1999) (stating that jurisdiction must be addressed and that plaintiff "lacked standing to bring suit against appellees"); *Curtis v. Board of Appeals*, 90 Hawai'i 384, 393, 978 P.2d 822, 831 (1999) (noting that as a threshold matter a court must first determine if it ·has jurisdiction); *Public Access Shoreline Hawaii v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) ("It is well settled that 'every court must ... determine as a threshold matter whether it has jurisdiction to decide the issues presented.' ", (Quoting *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (brackets in omitted))); *cf. Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 133, 870 P.2d 1272, 1277 (1994) (stating that "though a [trial] court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for purpose of correcting an error in jurisdiction"). The United States Supreme Court has said that "jurisdiction generally must precede merits in dispositional order[.]" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143

---

7. HRCP Rule 12(b)(1) and (6) read:
 Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the fol-

 lowing defenses may at the option of the pleader be made by motion: ... (1) *lack of jurisdiction over the subject matter*, ... (6) *failure to state a claim upon which relief can be granted* ....

 (Emphases added.)

L.Ed.2d 760 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). *See also Steel Co.*, 523 U.S. at 94–95, 118 S.Ct. 1003 ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (Internal quotation marks, brackets, and citations omitted.)); *United States v. Larson*, 302 F.3d 1016, 1019 (9th Cir.2002) (relying on *Steel Co.* in its assertion that "[b]efore reaching the merits of any claim, we are compelled to determine whether there is a case or controversy that frames our jurisdiction over the claim"); *Bird v. Parsons*, 289 F.3d 865, 872–73 (6th Cir.2002) (performing jurisdictional analysis before proceeding to the merits, based on *Steel Co.*); *In re Rationis Enters., Inc. of Pan.*, 261 F.3d 264, 267 (2d Cir.2001) (same).

*Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797 (10th Cir.2000), is illustrative. In *Gadlin*, the plaintiffs sued in federal court, pleading diversity jurisdiction. *See id.* at 798. The defendants moved for dismissal based on lack of subject matter and personal jurisdiction and expiration of the statute of limitations. *See id.* The district court dismissed the complaint solely on statute of limitations grounds. *See id.* Relying on *Ruhrgas* and *Steel Co.*, the Tenth Circuit held that, before considering the merits of a case, courts must first address jurisdictional matters. *Gadlin*, 222 F.3d at 799.

The circuit court of appeals dismissed the case due to lack of jurisdiction, for "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking[.]" *Id.* at 800 (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974) (internal quotation marks and emphasis omitted)). The Tenth Circuit did not consider the statute of limitations defense, inasmuch as "the lack of subject matter jurisdiction preclude[d] the court's] ruling on that issue." *Id. See also Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (Quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868).)).

Here, the parties argued the question of personal jurisdiction extensively in their memoranda. The oral arguments before the court centered on the jurisdiction matter. Because jurisdiction should be determined before consideration of the merits of any claim or defense, the jurisdictional question should have been decided before the statute of limitations defense.

## IV.

We must first determine whether Defendants' activities satisfy the requirements under HRS § 634–35 so as to give the court personal jurisdiction over Defendant. Personal jurisdiction exists when (1) the defendant's activity falls under the State's long-arm statute, and (2) the application of the statute complies with constitutional due process. *Shaw v. North Am. Title Co.*, 76 Hawai'i 323, 327, 876 P.2d 1291, 1295 (1994). Plaintiff claims that Defendants' conduct falls specifically within HRS §§ 634–35(a)(1) and (2). The relevant subsections of HRS § 634–35 read as follows:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to *any cause of action arising from the doing of any of the acts:*

(1) *The transaction of any business within this State;*

(2) *The commission of a tortious act within this State;*

. . . .

(c) *Only causes of actions arising from acts enumerated herein may be asserted against a defendant* in action in which jurisdiction over the defendant is based upon this section [ (HRS § 634–35) ].

(Emphases added.) We consider the enumerated acts in turn.

## A.

 Assessing whether a nonresident transacted business in Hawai'i under HRS § 634–35(a)(1) "demands an examination of all of the defendants' activities within the forum related to the present cause of action." *Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 652, 608 P.2d 394, 400 (1980). Physical presence of a defendant or a defendant's agent is not required. *See id.*

*Shaw* applied HRS § 634–35(a)(1). In that case, a dispute arose between the plaintiff, a Hawai'i resident, and the defendant, a California corporation, over alleged mishandling of an escrow transaction to refinance the plaintiff's California property. *See* 76 Hawai'i at 325–26, 876 P.2d at 1293–94. The defendant argued that it had not transacted business in Hawai'i, since the defendant had formed the escrow contract with a California bank and not with the plaintiff, the defendant's contacts with Hawai'i were "administrative in nature," involving check mailings to the plaintiff and "related communications," and the defendant was not registered to do business in Hawai'i, owned no property in Hawai'i, and had not solicited business in Hawai'i. *See id.* at 328, 876 P.2d at 1296. It was concluded that "[the defendant's] dealings, based on a California contract, were merely *incidental* to the escrow transaction conducted in California. Moreover, the subject property was located in California, and the escrow contract was between California residents." *See id.* (emphasis added). The plaintiff had not alleged any solicitation of business by the defendant. *See id. Shaw* accordingly held that the plaintiff failed to show transaction of business in Hawai'i by the defendant. *See id.*

## B.

In *Cowan*, the defendants were based in California while the plaintiff was a Hawai'i resident. The defendants had listed the sale of boats in two national publications which were sold and distributed in Hawai'i. *See* 61 Haw. at 646, 608 P.2d at 397. After reading the advertisements listed in these publications, the plaintiff wrote a letter to the defendants inquiring about use of their services to sell the plaintiff's boat. *See id.* The defen-

dants sent an unsigned listing agreement to Hawai'i, and the plaintiff signed it and sent the agreement back to them. *See id.* at 646–47, 608 P.2d at 397–98. The listing agreement was never signed by the defendants, but the defendants then transmitted the forms to plaintiff for the purpose of listing his boat in one of the nationally published magazines. *See id.* at 647, 608 P.2d at 398. The defendants contacted the plaintiff to request that the boat be moved to California to expedite any expected sale, and the plaintiff complied. *See id.* After the boat was berthed in the defendants' marina, the boat was damaged, and the plaintiff brought suit. *See id.*

In determining whether the defendants transacted business in Hawai'i under HRS § 634–35(a)(1), the *Cowan* court examined the contract involved and solicitation activities of the defendants in Hawai'i. With regard to the contract, this court first noted that "contracting in the State unquestionably constitutes transacting business under HRS § 634–35." *Id.* at 649, 608 P.2d at 399 (citation omitted). This court then found that there was a contractual relationship between the parties, despite any defects in the contract formation and the imprecise location of where it was finally executed, since "both parties treated the [listing] agreement as binding and proceeded to perform in accordance with its terms." *Id.* at 650–651, 608 P.2d at 399–400. Examining the defendants' solicitation activities, this court ruled that the defendants' listing of boats for sale in nationally distributed publications led to the plaintiff's contact with the defendants and subsequent injury to the boat. *See id.* at 652–53, 608 P.2d at 401. Therefore, "considering all of the *defendants' business activities*," this court found the in-state transactions sufficient to rule that the defendants' activities fell within the reach of HRS § 634–35(a)(1). *See id.* at 654, 608 P.2d at 401.

## V.

In the instant case, we first note that Plaintiff's statement that "Defendants consummated a transaction with [Plaintiff], *albeit not in Hawaii* [,]" (emphasis added)

suggests that there was no transaction of business in Hawai'i under HRS § 634–35(a)(1). However, in accordance with *Cowan*, we examine Defendants' activities that are related to the present causes of action. 61 Haw. at 651, 608 P.2d at 400 (noting that "purposeful acts," whether preliminary or subsequent to the transaction, may meet the statutory test for transacting business). Plaintiff asserts that she first learned of Defendants' theme parks through an advertisement in a national publication. She also mentions that in planning her 1998 trip to California, she visited Defendants' website to learn about "the nature of [the theme park's] attractions, hours of operation and the like," and based her decision to visit the park on this information.

We are not persuaded that Plaintiff's causes of action arose from these activities of Defendants. Plaintiff does not relate that Defendants' business activities with travel agents, provision of brochure to one travel agency, or offer of discount to members of the HSBA gave rise to her causes of action. Nor does she indicate that she purchased any tickets on Defendants' website.

Plaintiff relied on acts that essentially amounted to advertising. Defendants' advertisement in a magazine and on a website provided general information about Defendants' California theme park. Plaintiff's website use was the equivalent of leafing through a multi-page advertisement in a nationally distributed magazine. Courts have generally held that this type of contact is not enough to confer personal jurisdiction. *See, e.g., Kluin v. American Suzuki Motor Corp.*, 56 P.3d 829 (Kan.2002) (ruling that the defendant's articles and advertisements on its web site and in nationally distributed magazines do not meet the "[t]ransaction of any business" requirement of Kansas' long-arm statute); *Coastal Video Communs., Corp. v. Staywell Corp.*, 59 F.Supp.2d 562, 566 (E.D.Va.1999) (holding that advertising, either via the Internet or through mail-order catalogs, did not amount to "proof that [the defendant] transacted business relevant to the cause of action"); *cf. Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999) (citing *Zippo* in holding that "[a]bsent a defendant doing business over the Internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate"). While *Cowan* mentioned that the defendants' national advertising was a *factor* in determining whether the defendants transacted business in Hawai'i, *see* 61 Haw. at 653, n. 10, 608 P.2d at 400, n. 10, it was not held to be dispositive.

In *Cowan*, the defendants made repeated personal contacts with the plaintiff in Hawai'i, in furtherance of their contractual relationship. The existence of a contractual relationship and acts in Hawai'i with respect to a contract are absent here. There is no evidence that Defendants engaged in business with Plaintiff in Hawai'i. The record only points to passive distribution of information of which Plaintiff availed herself.

Moreover, the activities of Defendants that led to Plaintiff's causes of action were less substantial than those in *Shaw*, which were characterized as "incidental." As mentioned, there is no evidence Plaintiff purchased her ticket to the theme park in Hawai'i. Defendants' contacts with Hawai'i, which were related to Plaintiff's suit, involved advertising in a magazine and on a website. The injury that led to Plaintiff's causes of action took place in California. Plaintiff accordingly failed to establish that the causes of action arose from the transaction of any business within this State.

## VI.

In *Kailieha v. Hayes*, 56 Haw. 306, 536 P.2d 568 (1975), this court held that under Hawaii's long-arm statute, "[a] tort is committed where the injury occurs, and the phrase 'tortious act' encompasses the injurious consequences of an act." *Id.* at 307, 536 P.2d at 569 (citations omitted). In *Kailieha*, a Hawai'i resident visited a doctor in Virginia for treatment, and upon returning to Hawai'i, the resident lost consciousness while driving and collided with the plaintiff's vehi-

cle. *See id.* at 306, 536 P.2d at 569. The plaintiff alleged that the Virginia doctor did not properly diagnose the Hawai'i resident and negligently caused the accident through improper diagnosis and medication. *See id.* at 307, 536 P.2d at 569. It was held that the automobile collision in Hawai'i was an "injurious consequence" of the tort allegedly committed in Virginia and, thus, was part of the doctor's commission of a tortious act under Hawaii's long-arm statute.[8] *Id.* The plaintiff, however, failed to satisfy the due process requirements to bring suit, because it was "fundamentally unfair and offensive to all traditional notions of fair play and substantial justice to compel the [doctor] to defend a suit in the courts of Hawai'i, simply by reason of an isolated encounter in Virginia with a resident of Hawai'i." *Id.* at 313, 536 P.2d at 573.

In the instant case, Plaintiff states that the injury itself occurred on a roller coaster ride at Defendants' California theme park. The result of Defendants' alleged tortious acts culminated in the head injury to Plaintiff. Thus, the injury and its consequences occurred in California. The subsequent events in Hawai'i, including Plaintiff's hospital stay and surgery, amounted to treatment for the injury. Accordingly, we conclude the court lacked personal jurisdiction over Defendants under HRS § 634–35(a)(2).

### VII.

For the foregoing reasons, Defendants' acts do not fall within the scope of HRS §§ 634–35(a)(1) and (2). We hold, then, that the court had no personal jurisdiction over Defendants in this case.[9] Therefore, we vacate the court's January 4, 2001 order dismissing Plaintiff's case on statute of limitations grounds and its January 11, 2001 judgment entered thereon, and remand the case with instructions to the court to enter an order dismissing Plaintiff's complaint against Defendants on the ground that it lacked personal jurisdiction.

8. *Kailieha* interpreted HRS § 634–71. HRS § 634–71 was renumbered as HRS § 634–35 in 1985. The text regarding "tortious act" has not changed in the interim.

Concurring Opinion by MOON, C.J.

I concur in the result only.

9. In light of the analysis herein and facts in the instant case, the matters sought by Plaintiff to be produced in discovery would not be material or relevant.