**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-22-0000029
05-APR-2023
09:39 AM
Dkt. 12 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ACADEMIC LABOR UNITED, an unincorporated association; ASHLEY
HI'ILANI SANCHEZ; KAWAENA'ULAOKALĀ KAPAHUA; and CAMERON GRIMM,
Plaintiffs-Appellants,

vs.

BOARD OF REGENTS OF THE UNIVERSITY OF HAWAI'I; HAWAI'I
LABOR RELATIONS BOARD; and STATE OF HAWAI'I,
Defendants-Appellees.

SCAP-22-0000029

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-22-0000029; CASE NO. 1CCV-21-0000559)

APRIL 5, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND EDDINS, JJ.,
AND WILSON, J., ASSIGNED BY REASON OF VACANCY[1]

OPINION OF THE COURT BY RECKTENWALD, C.J.

---

[1]    See Order of Designation filed on March 29, 2023, in
SCMF-23-0000218.

## I.    INTRODUCTION

Petitioner Academic Labor United ("ALU") represents graduate student employees of the University of Hawai'i who wish to engage in collective bargaining.[2]  ALU brought suit against the Board of Regents of the University of Hawai'i ("BOR"), the Hawai'i Labor Relations Board ("HLRB") and the State of Hawai'i ("State") in the Circuit Court of the First Circuit.  ALU contends that a pair of 1972 decisions from the Hawai'i Public Employment Relations Board (HPERB, predecessor to HLRB) finally determined that graduate assistants are not "employees" under Hawai'i Revised Statutes ("HRS") Chapter 89 - and that these decisions thus foreclosed graduate assistants from exercising the collective bargaining rights provided to public employees under article XIII, section 2 of the Hawai'i Constitution and HRS Chapter 89, its implementing legislation.

ALU requested declaratory judgments stating that ALU's members are "persons in public employment" under article XIII, section 2, that they are "public employees" under HRS Chapter 89, and that HLRB's rules lack any process by which persons in

_____

[2]    ALU is an "unincorporated association of graduate assistants at the University of Hawai'i" that seeks to "organiz[e] graduate assistants for the purpose of collective bargaining."  Petitioners Ashley Hi'ilani Sanchez, Kawena'ulaokalā Kapahua, and Cameron Grimm are graduate assistants at the University of Hawai'i.  Named plaintiffs-appellants and Academic Labor United are designated collectively as "ALU."

positions previously excluded from collective bargaining may seek relief.  The circuit court dismissed the case on jurisdictional grounds.  Under HRS § 632-1 (2016), in order to exercise jurisdiction over ALU's action, the circuit court must be satisfied that ALU has exhausted its statutory and administrative remedies and that declaratory judgment would "terminate the uncertainty or controversy."  The circuit court found that neither requirement had been met and dismissed the case without reaching the merits.

We affirm.  ALU has not exhausted its administrative remedies.  HPERB's 1972 decisions are not final rulings on whether ALU and its members are excluded from HRS Chapter 89.  Hawai'i Administrative Rules ("HAR") § 12-42-9 (effective Feb. 6, 1981) permits an "interested . . . organization" such as ALU to seek a declaratory judgment from HLRB.  Because ALU has not yet invoked HAR § 12-42-9 to clarify whether its members are "employees" under HRS Chapter 89, it has not exhausted administrative remedies, and the circuit court did not have jurisdiction over ALU's action.

## II.  BACKGROUND

### A.    The Constitutional Right to Collective Bargaining

In 1968, the Hawai'i Constitution was amended to include article XIII, section 2, which gives "[p]ersons in

2

public employment" the "right to organize for the purpose of collective bargaining as provided by law."  (Emphasis added.) Pursuant to article XIII, section 2, the Hawai'i Legislature enacted statutes governing how public employees may organize and collectively bargain.  See HRS Chapter 89 (titled "Collective Bargaining in Public Employment").

HRS Chapter 89 defined who qualifies as an "employee" or "public employee" for the purpose of collective bargaining, and required that all persons qualifying as "public employee[s]" under the statute be placed in one of the statutorily defined bargaining units.  HRS § 89-2 (2012); HRS § 89-6(a) (Supp. 2021).  Many of the rights in HRS Chapter 89 belong to the unions serving as certified exclusive representatives of the bargaining units, not to public employees as individuals.  See HRS § 89-8 (2012); HRS § 89-9 (Supp. 2021); HRS § 89-10 (2012) (setting out the rights of the exclusive representatives of the statutorily defined bargaining units).

To administer HRS Chapter 89, the legislature created the HPERB, which later became the HLRB.[3]  HPERB was tasked with determining which positions belonged in each statutorily-defined

---

[3]     See 1985 Haw. Sess. Laws Act 251, § 4 at 476-78 (changing HPERB to HLRB).

bargaining unit, and certifying exclusive representatives for all units.  See 1970 Haw. Sess. Laws Act 171, § 5 at 311—13. Two of the bargaining units in HRS § 89-6 included employees of the University of Hawai'i.  Unit 7 comprises "[f]aculty of the University of Hawai'i and the community college system,"  HRS § 89-6(a)(7) (Supp. 1971), and Unit 8 comprises "[p]ersonnel of the University of Hawai'i and the community college system, other than faculty,"  HRS § 89-6(a)(8) (Supp. 1971).[4]

**B.    HPERB's 1972 Decisions Determining the Composition of Bargaining Units 7 and 8**

In 1972, HPERB initially considered which positions should be included in Units 7 and 8, and decided that graduate assistants should be excluded from both units.[5]  Haw. Fed'n of Coll. Tchrs., Case No. R-07-12 (HPERB Sept 15, 1972) (Order Affirming Hearings Officer's Findings of Fact, Conclusions of Law and Recommendations and Direction of Election) (hereinafter "Decision No. 21: Order"); Haw. Fed'n of Coll. Tchrs., Case No. R-08-13 (HPERB Dec. 29, 1972) (Order Affirming Hearing Officer's

---

[4]    HRS § 89-2(7)-(8) have not been amended since HPERB Decision Nos. 21 and 25.  Compare HRS § 89-2(7)-(8) (Supp. 1971) with HRS § 89-2(7)-(8) Supp. 1976) and HRS § 89-2(7)-(8) (Supp. 2021).

[5]    The decision excluding graduate assistants from Unit 7, "[f]aculty of the University of Hawai'i and the community college system," was numbered as Decision No. 21 by HPERB and is hereinafter referred to as Decision No. 21.  The decision excluding graduate assistants from Unit 8, "[p]ersonnel of the University of Hawai'i and the community college system, other than faculty," was numbered as Decision No. 25 by HPERB and is hereinafter referred to as Decision No. 25.

4

Findings of Fact, Conclusions of Law and Recommendations and Direction of Election) (hereinafter "Decision No. 25: Order").

HPERB Hearings Officer Stephen K. Yamashiro held a hearing on March 15, 1972 and issued his Findings of Fact, Conclusions of Law and Recommendations on the positions that should be included in Bargaining Unit 7 on July 17, 1972. Decision No. 21: Order at 2. Officer Yamashiro decided that graduate students should not be included in Unit 7. Haw. Fed'n of Coll. Tchrs., Case No. R-07-12 (HPERB Sept 15, 1972) (Findings of Fact, Conclusions of Law, and Recommendations) (hereinafter "Decision No. 21: FOF/COL") at 23. He reasoned that graduate students "are classified on a different compensation schedule," "the nature of their appointments differs substantially from that of the faculty," and "the nature of the work performed by the graduate assistants differs from that performed by the faculty." Id.

In reaching his decision, Officer Yamashiro found persuasive a determination from the Michigan Court of Appeals, in which the court had found that medical interns were not "public employees" because holding them to be employees would "impinge, to some degree, upon the constitutional authority of the Regents to control the educational affairs of the student."

5

Decision No. 21, FOF/COL at 22, paraphrasing <u>Regents of Univ. of Mich. v. Mich. Emp. Rels. Comm'n</u>, 195 N.W.2d 875, 879 (Mich. Ct. App. 1972), <u>rev'd sub nom.</u> <u>Regents of Univ. of Mich. v. Mich. Emp't Rels. Comm'n</u>, 204 N.W.2d 218 (Mich. 1973).  Officer Yamashiro reasoned that excluding graduate assistants from Unit 7 "entails due regard to the possible infringement upon the constitutional authority of the Board of Regents" of the University of Hawai'i.  Decision No. 21: FOF/COL at 23.  In other words, including graduate assistants in Unit 7 would infringe upon BOR's powers under article IX of the constitution (now article X), which empowers the BOR to govern the operation of the University of Hawai'i.[6]  <u>Id.</u> at 22.  HPERB adopted Officer

---

[6]     In 1972, article IX, section 5 of the Hawai'i Constitution provided that:

> There shall be a board of regents of the University of Hawai'i, the members of which shall be nominated and, by and with the advice and consent of the senate, appointed by the governor.  At least part of the membership of the board shall represent geographic subdivisions of the State.  <u>The board shall have power, in accordance with law, to formulate policy, and to exercise control over the university</u> through its executive officer, the president of the university, who shall be appointed by the board.

Haw. Const. art IX, § 5 (1972) in Comm. Proposal No. 6, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978, at 792 (1980) (<u>1 Proceedings</u>) (emphasis added).

Article IX was renumbered by the Constitutional Convention of 1978 and appears in the current constitution as article X, section 6.  It now further provides that "[t]he board shall also have exclusive jurisdiction over the internal structure, management, and operation of the university." Haw. Const. art. X, § 6.

Yamashiro's recommendation as to graduate assistants in full. Decision No. 21: Order at 4-10.

Officer Yamashiro presided over another hearing on August 23, 1972 in order to determine which positions should be included in Unit 8, "personnel of the University of Hawai'i and the community college system, other than faculty." Decision No. 25: Order at 2, 4. In reaching the conclusion that graduate assistants should be excluded from Unit 8, he discussed graduate assistants' duties, compensation, and benefits, compared graduate assistants' compensation with that of other non-faculty staff, and decided that a graduate assistant's "primary role [at the University] is that of a student." Haw. Fed'n of Coll. Tchrs., Case No. R-08-13 (HPERB December 29, 1972) (Findings of Fact, Conclusions of Law and Recommendations) (hereinafter "Decision No. 25: FOF/COL") at 20-22. He went on to state that graduate assistants are not "public employees" under HRS Chapter 89 at all:

> Under the facts presented it is clearly shown that graduate assistants are not in the same occupational grouping nor are they paid on the same salary schedule as [other non-faculty staff]. Graduate assistants do not have their compensation subjected to social security and federal income taxes nor are they members of the State retirement system. The compensation given to graduate assistants is treated as a grant or form of financial aid. These factors combined would justify a finding that graduate assistants are not employees within Chapter 89, and should be excluded from Unit 8.

Decision No. 25: FOF/COL at 21 (emphasis added).

7

Officer Yamashiro also based his decision to exclude graduate students from Unit 8 on his analysis of the Hawai'i Constitution. Decision No. 25: FOF/COL at 22. He reasoned that considering graduate assistants "public employees" under HRS Chapter 89 would infringe upon the BOR's powers under article IX (now article X):

> Students at the University are subject to the policies and standards of enrollment established by the Regents. Should the terms and conditions of continued enrollment become subject to collective bargaining, the constitutional authority of the Regents would be interfered with. . . . To include graduate assistants into Unit 8 would be to ignore their primary status as students and would unduly impinge upon the rights and authority of the Regents.
>
> A constitutional provision must be construed in connection with other provisions of the instrument, the circumstances under which it was adopted and the history which preceded it. The natural consequences of a proposed construction must be considered in determining the intent of its framers. Carter v. Gear, 16 Haw. 242, Affirmed 24 S. ct. 491, 197, US 348 (1904). Article XII, Section 2 of the Hawai'i Constitution does not attempt to interfere with the authority granted the Regents by Article IX of the Constitution. To find that graduate assistants are public employees under Chapter 89 would result in an infringment [sic] upon the power granted the Regents by the Constitution.

Decision No. 25: FOF/COL at 22 (emphasis added).

HPERB adopted all of Officer Yamashiro's conclusions of law with regard to graduate assistants.[7] Decision No. 25: Order at 1-6. The decisions were not appealed.

---

[7] The only amendment HPERB made to Officer Yamashiro's recommendation that implicated graduate assistants was to reject one of his findings of fact. Decision No. 25: Order at 2-3. HPERB agreed that "once a graduate assistant completes his academic work he must terminate his employment" but disagreed that "once a graduate assistant receives his degree he has no employment possibility with his department." Id. at 2. HPERB

(continued . . .)

8

## C.    Procedural History

In the instant case, ALU argues that HPERB's 1972 decisions functionally preclude graduate assistants from exercising the collective bargaining rights that they are due under article XIII, section 2 of the constitution as "persons in public employment."  ALU sued the BOR, HLRB, and the State in the Circuit Court of the First Circuit seeking a series of declaratory judgments falling into three categories.[8]  ALU sought judgments to the effect that: (1) graduate assistants are "persons in public employment" within the meaning of article XIII, section 2; (2) that they are "employee[s]" or "public employee[s]" under HRS Chapter 89; (3) that HLRB's rules lack any process by which persons in positions previously excluded from collective bargaining may seek relief.

HLRB filed a motion to dismiss or in the alternative for summary judgment which the State joined, arguing that the circuit court did not have subject matter jurisdiction over ALU's action.  HLRB argued that declaratory judgment was

---

(continued . . .)
noted that while graduate students have no possibility to continue working as graduate assistants, "the record is silent as to notable examples of graduate assistants who, once earning their degrees, have gone on to become professors in their departments."  Id. at 2-3.

[8]    The Honorable James H. Ashford presided.

improper under HRS § 632-1[9] because ALU had not exhausted its administrative remedies before HLRB, citing a number of rules that HLRB had promulgated to make remedies available as required by HRS § 91-8 (2012)[10] and HRS § 89-6(g) (2012).[11] HLRB further argued that granting ALU's requested relief would not "terminate the uncertainty or controversy giving rise to the proceeding."

---

[9] HRS § 632-1(b) provides as follows:

(b) Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and <u>the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed</u>; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

(Emphasis added.)

[10] HRS § 91-8 provides that "[a]ny interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency."

[11] HRS § 89-6(g) provides that "[w]here any controversy arises under this section, the board shall, pursuant to chapter 91, make an investigation and, after a hearing upon due notice, make a final determination on the applicability of this section to specific individuals, employees, or positions."

HRS § 632-1. The circuit court agreed with both arguments and granted HLRB's motion to dismiss.

BOR also filed a motion to dismiss or in the alternative for summary judgment. The motion incorporated the jurisdictional arguments HLRB had made in its motion, and further argued that ALU's claims were barred pursuant to HRS § 304A-108(a) (2020).[12] That statute provides that "all claims arising out of the acts or omissions of the university or the members of its board of regents . . . may be brought only pursuant to this section and only against the university." HRS § 304A-108(a). BOR also argued that there was no actual controversy between ALU and BOR. The circuit court agreed with BOR's argument under HRS § 304A-108(a), and granted the motion, dismissing BOR.

ALU appealed from the circuit court's final judgment dismissing the case. We accepted transfer from the Intermediate Court of Appeals.

---

[12] HRS § 304A-108(a) provides in relevant part:

(a) The university may sue and be sued in its corporate name. Notwithstanding any other law to the contrary, all claims arising out of the acts or omissions of the university or the members of its board of regents, its officers, or its employees, including claims permitted against the State under chapter 661, part I, and claims for torts permitted against the State under chapter 662, may be brought only pursuant to this section and only against the niversity. . . .

## III. STANDARD OF REVIEW

### A.    Subject Matter Jurisdiction

The existence of subject matter jurisdiction is reviewed de novo under the right/wrong standard.  Kilakila 'O Haleakala v. Bd. Of Land & Nat. Res., 131 Hawai'i 193, 199, 317 P.3d 27, 33 (2013).

### B.    Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard.  Guth v. Freeland, 96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001).

## IV.  DISCUSSION

The circuit court held that it did not have jurisdiction under HRS § 632-1 because ALU did not exhaust its statutory and administrative remedies.  We agree.  HPERB's 1972 rulings were not final determinations of whether graduate assistants are "employee[s]" under HRS Chapter 89.  There is an administrative remedy available to ALU under HAR § 12-42-9, which allows "interested . . . organization[s]" to petition for declaratory judgment from HLRB.  ALU has not shown that it has exhausted administrative remedies, that no remedies are

12

available to it, or that the available remedies would be futile.[13]

We also note that the circuit court erred in dismissing BOR from this case on the basis of HRS § 304A-108(a). It should have dismissed BOR on the same basis as HLRB, that it lacked jurisdiction over the action. However, we affirm the dismissal because the error was harmless.

## A. The Circuit Court Correctly Held That ALU Did Not Exhaust Administrative Remedies

ALU alleges that the circuit court erred in holding that it did not exhaust administrative remedies. HRS § 632-1(b) requires that where "a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed" before a court can exercise jurisdiction over a declaratory judgment action. We first assess whether HPERB's 1972 decisions are final and binding determinations that graduate assistants are not entitled to collective bargaining rights under Chapter 89. We then address HLRB's arguments that ALU has failed to exhaust the remedies available under HLRB's

---

[13]    Having determined that the circuit court lacks jurisdiction because ALU has not exhausted its administrative remedies, we do not reach the circuit court's other ground for dismissal under HRS § 632-1 (that declaratory judgment would not "terminate the uncertainty or controversy"). We also do not reach ALU's constitutional arguments on the merits, as the circuit court dismissed the case on jurisdictional grounds and did not reach those issues.

regulations.  Third and finally, we address ALU's argument that pursuit of a declaratory judgment before HLRB would be futile.

1.    **HPERB's 1972 rulings are not final, binding determinations that graduate assistants are not "public employees" under HRS Chapter 89**

ALU argues that HPERB issued a final ruling that graduate assistants are not "employees" within the meaning of HRS Chapter 89 in 1972.  As a result, there is no administrative process by which HLRB can now consider graduate assistants' inclusion in a bargaining unit.  According to ALU, because HPERB has held that graduate assistants are not "public employees" and because ALU is not an exclusive representative, neither ALU nor its members may petition to be included in a bargaining unit, because only an employee or an exclusive representative may petition for inclusion under HLRB's regulations.

In response, HLRB argues that Officer Yamashiro's statements in the recommendations that HPERB adopted in 1972 are mere "dicta," and maintains that it has never ruled on whether graduate assistants are "employees" under HRS Chapter 89.  HLRB further argues that graduate assistants might still be eligible for membership in Unit 13,[14] suggesting that exclusion from Units

---

[14]    Unit 13 comprises "[p]rofessional and scientific employees, who cannot be included in any of the other bargaining units."  HRS § 89-6(a)(13) (Supp. 2021).

7 and 8 does not necessarily exclude them from HRS Chapter 89 altogether.

The threshold question is whether Officer Yamashiro's statements in HPERB's 1972 decisions can be considered final determinations that graduate assistants are not "employees" under HRS Chapter 89. ALU's argument that HPERB made a final determination finds support in several passages in the decisions. In deciding to exclude graduate assistants from Unit 7, Officer Yamashiro reasoned that excluding graduate assistants from Unit 7 "entails due regard to the possible infringement upon the constitutional authority of the Board of Regents" of the University of Hawai'i, because graduate assistants' employment was intertwined with their status as students. Decision No. 21: FOF/COL at 22-23. This implies that graduate students are not only excluded from Unit 7, but that they are also not public employees under the constitution. Decision No. 21: FOF/COL at 23.

Officer Yamashiro expanded that point in Decision No. 25. In the course of giving his reasoning for excluding

graduate assistants from Unit 8, he opined that graduate assistants should not be under HRS Chapter 89 at all:

> Under the facts presented it is clearly shown that graduate assistants are not in the same occupational grouping nor are they paid on the same salary schedule as [other non-faculty staff]. Graduate assistants do not have their compensation subjected to social security and federal income taxes nor are they members of the State retirement system. The compensation given to graduate assistants is treated as a grant or form of financial aid. <u>These factors combined would justify a finding that graduate assistants are not employees within Chapter 89, and should be excluded from Unit 8.</u>

Decision No. 25: FOF/COL at 21 (emphasis added).

Later, Officer Yamashiro stated that because graduate assistants are "primarily students," "[t]o find that graduate assistants are public employees under Chapter 89 would result in an infringment [sic] upon the power granted the Regents by the Constitution." Decision No. 25: FOF/COL at 21-22.

Though these passages in Decision Nos. 21 and 25 do provide support for ALU's position, HLRB is correct that, when viewed in context, HPERB was not ruling on whether graduate assistants were "employee[s]" under HRS § 89-2. Neither proceeding was held to answer that question. The Decision No. 21 hearing was held "to determine the composition of Unit 7," and the Decision No. 25 hearing was conducted "to determine employee inclusions in and exclusions from Unit 8." Decision No. 21: FOF/COL at 1; Decision No. 25: Order at 2.

16

Thus, the final effect of the orders in Decision Nos. 21 and 25 was to exclude graduate assistants from Unit 7 ("[f]aculty of the University of Hawai'i and the community college system") and Unit 8 ("[p]ersonnel of the University of Hawai'i and the community college system," other than faculty). See Decision No. 21: Order at 10; Decision No. 25: Order at 2; Decision No. 25: FOF/COL at 12. Critically, neither HPERB nor HLRB has addressed whether graduate assistants belong in Unit 13 ("[p]rofessional and scientific employees, who cannot be included in any of the other bargaining units"). HRS § 89-6(a)(13). Graduate assistants' exclusion from Units 7 and 8 is therefore not equivalent to holding that they are excluded from Chapter 89 altogether. Since HLRB has not ruled that they should be excluded from Unit 13, the question of the status of graduate assistants as public employees remains open.

Furthermore, interpreting Officer Yamashiro's statements in Decision Nos. 21 and 25 to have final, preclusive effect would be at odds with HLRB's duty to administer HRS Chapter 89. As HLRB has argued, its unit certification decisions are not "unmovable." HLRB is required to bring new positions within the definition of "public employee," and adjust the composition of bargaining units, as necessitated by changes

17

to the law or facts.[15]  HRS § 89-2.  In Decision Nos. 21 and 25, HLRB made its bargaining unit composition determinations based on graduate assistants' duties in 1972.  But ALU has alleged that the nature of graduate student employment has changed significantly since then.[16]  ALU also contends that the authorities that Officer Yamashiro relied to support his decisions are no longer good law.  If HLRB is presented with a petition alleging that graduate assistants' duties and other circumstances have substantially changed since it issued Decision Nos. 21 and 25, HLRB has a statutory duty to reexamine

---

[15]     HLRB is required to adjudicate any controversy that arises under Chapter 89, and is specifically required to making determinations about the inclusion of particular positions in bargaining units.  HRS § 89-5(i)(3) (Supp. 2021) provides that HLRB shall "resolve controversies under [Chapter 89]," and HRS § 89-6(g), which lays out the statutory bargaining units, provides that "[w]here any controversy arises under this section, the board shall, pursuant to chapter 91, make an investigation and, after a hearing upon due notice, make a final determination on the applicability of this section to specific individuals, employees, or positions."  Since 1972, HLRB has adjudicated cases brought by unions and employers requesting clarification on particular positions' status as "public employees," or for particular positions to be included in, or excluded from, particular bargaining units.  See, e.g., HGEA v. Fasi, Consolidated Case Nos. RA-02-15, RA-03-16, RA-04-17, RA-13-18, DR-02-12, DR-03-13, DR-04-14, DR-13-15 (HPERB Nov. 1, 1977) (Decision No. 85) (HAR § 12-49-9 petition to determine if employees of MTL, Inc., are "public employees" of the City and County of Honolulu within the meaning of HRS § 89-2); Bd. of Regents v. UHPA, Case Nos. RA-07-37, RA-08-37 (HLRB July 18, 1980) (Decision No. 132) (BOR's petition to transfer seven positions from Unit 7 to Unit 8).  As HLRB argued, the cumulative result of its decisions is that "the composition of the bargaining units has changed over time."

[16]     ALU alleges that there have been several important changes since 1972.  In 1972, graduate student teaching was part of their education or training within their degree program, but present-day graduate students teach with the goal of receiving a salary, and they often teach courses far removed from their area of expertise that do not provide educational benefit.  Also, in contrast to HPERB's findings in 1972, graduate students today teach with minimal or no faculty supervision.

those decisions, and issue a ruling based on graduate assistants' current status.

We hold that HPERB's 1972 statements are not a binding, final adjudication that graduate assistants are not "employee[s]" within the meaning of HRS § 89-2. Since HPERB's decisions do not finally resolve the issue, ALU should pursue further administrative remedies before HLRB to seek an answer to this question, provided such remedies are available.

**2.    An administrative remedy is available to ALU under HAR § 12-42-9**

Though we find that HPERB's 1972 rulings are not final and binding on ALU and its members, if there is no administrative remedy open to ALU to seek clarification of graduate assistants' status under HRS Chapter 89, ALU may seek declaratory relief in the circuit court. Hokama v. Univ. of Haw., 92 Hawai'i 268, 273, 990 P.2d 1150, 1155 (1999) ("An aggrieved party need not exhaust administrative remedies where no effective remedies exist."). HLRB has proposed a number of administrative remedies that it argues are available to ALU, citing HAR §§ 12-42-9, -17, -18, -19, and -20 (effective Feb. 6, 1981). We analyze each rule that HLRB has raised in order to determine if it provides a remedy ALU should reasonably have been expected to exhaust.

Notably, several statutes empower HLRB to adjudicate controversies relating to Chapter 89. HRS § 89-5(i)(3) generally gives HLRB the power to "[r]esolve controversies under [Chapter 89]." In HRS § 89-6, which governs bargaining unit determinations, section (g) provides that "[w]here any controversy arises under this section, the board shall, pursuant to Chapter 91, make an investigation and, after a hearing upon due notice, make a final determination on the applicability of this section to specific individuals, employees, or positions." Moreover, HRS § 91-8 provides that "[a]ny interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency." Read together, these statutes give HLRB broad authority to decide questions of the applicability of Chapter 89, and the applicability of its own regulations and orders.

HLRB has promulgated rules to give effect to these statutes and has suggested that ALU pursue remedies provided by those rules. However, most of these procedures are not open to ALU. What HLRB calls the "established procedure" for adding a position to a bargaining unit, in HAR § 12-42-20, may only be used by an "exclusive bargaining representative or any public

employer[.]"[17]  To use § 12-42-20, ALU would have to request that the exclusive representative of Unit 7, 8 or 13 petition HLRB to include the position of "graduate assistant" in its unit.  It would be unreasonable to require ALU to exhaust administrative procedures that require it to first secure representation by a third party.  HLRB also cites HAR §§ 12-42-17 and -18, but only an "employee organization or anyone authorized to act in its behalf" can invoke these procedures, and ALU has not been recognized as such.[18]  HAR §§ 12-42-17, -18 and -20 are more properly considered administrative remedies belonging to employers and exclusive representatives, not to ALU.

HLRB also cites HAR § 12-42-19, a rule enabling a public employee to petition for the decertification of the

_____

[17]    HAR § 12-42-20(a) provides that "[a] petition for clarification of an appropriate bargaining or optional appropriate bargaining unit or amendment of certification may be filed by <u>the exclusive bargaining representative or any public employer</u> at any time."  HAR § 12-42-20(a) (emphasis added).

[18]    HAR § 12-42-17(b) provides that "[a] petition to determine an optional appropriate bargaining unit may be filed by <u>an employee organization or anyone authorized to act in its behalf</u>."  HAR § 12-42-17(b) (emphasis added).  The optional bargaining units include "[p]rofessional and scientific employees, other than registered professional nurses," which appears to correspond with Unit 13 from HRS 89-6, "[p]rofessional and scientific employees, who cannot be included in any of the other bargaining units."  <u>See</u> HRS 89-6(a)(13); HAR § 12-42-17.

HAR § 12-42-18 provides that "[a] petition to select an exclusive bargaining representative of an appropriate bargaining or optional appropriate bargaining unit may be filed by <u>an employee organization or anyone authorized to act in its behalf</u>."  HAR § 12-42-18(a) (emphasis added).

21

exclusive representative of a bargaining unit.[19]  It is unclear why HLRB suggests this regulation because decertifying the exclusive representatives in Unit 7 or 8 would not bring ALU relief.  In any event, HAR § 12-42-19 is designed to be invoked by a "public employee."  ALU's members have not been recognized as public employees - this is the controversy they seek to resolve.

Finally, HLRB suggests a declaratory judgment action under § 12-42-9.  In contrast to §§ 12-42-17, -18, -19, and -20, § 12-42-9 is not limited to employee organizations or public employees.  HAR § 12-42-9 enables any "interested person or organization" to ask for a declaratory ruling to determine the applicability of HLRB's rules or orders.  HAR § 12-42-9(a) ("Any public employee, employee organization, public employer, or interested person or organization may petition the board for a declaratory order as to the applicability of any statutory provision or of any rule or order of the board.") (emphasis added).

---

[19]     HAR § 12-42-19(a) provides:

> A petition for decertification of an exclusive bargaining representative may be filed by any public employee, or representative authorized to act in the employee's behalf, alleging that the certified exclusive bargaining representative is no longer the majority representative of the employees in the appropriate bargaining or optional appropriate bargaining unit.

HAR § 12-42-19(a) (emphasis added).

Based on the plain text of HAR § 12-42-9, we see no reason that ALU would be foreclosed from petitioning HLRB for declaratory judgment directly under that provision. Allowing HLRB to speak first on whether today's graduate assistants are "employees" has the advantage of mobilizing HLRB's expertise in administering HRS Chapter 89 and making bargaining unit determinations. ALU contends that the position of graduate assistants today is fundamentally different than in 1972. It argues that many aspects of graduate assistant work are now "indistinguishable from that performed by university faculty and administrative, professional and technical staff." HLRB's § 12-42-9 procedure would allow HLRB to consider the application of the definition of "employee[s]" under HRS § 89-2 to present-day graduate assistants, given their allegedly changed duties. HLRB would then have the opportunity to clarify the scope and applicability of HPERB's 1972 rulings. And if HLRB's determination is appealed, the courts will be able to review the record of proceedings before HLRB and its reasoning for its decision.

3. **Petitioning for declaratory judgment under HAR § 12-42-9 would not be futile**

ALU has not shown that a declaratory judgment petition under HAR § 12-42-9 would be futile. See Poe v. Haw. Lab. Rels.

Bd., 97 Hawai'i 528, 536, 40 P.3d 930, 938 (2002) ("Whenever exhaustion [of administrative remedies] will be futile it is not required." (quoting 4 Kenneth C. Davis, Administrative Law Treatise § 26:11 (2d ed. 1983) (alteration in original)); In re Doe, 96 Hawai'i 272, 287 n.20, 30 P.3d 878, 893 n.20 (2001) ("[T]he burden of proving that any particular administrative remedy is futile rests with the litigant seeking to bypass it.").

ALU argues that petitioning for declaratory judgment under HAR § 12-42-9 would be futile because declaratory rulings may not be used to review already-made agency decisions. Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City & Cnty. of Honolulu ("CARD"), 114 Hawai'i 184, 196—97, 159 P.3d 143, 155—56 (2007) (holding that declaratory rulings are "not intended to allow review of concrete agency decisions for which other means of review are available").[20]

HLRB argues that ALU's citation to CARD is inapposite. In CARD, petitioners sought a declaratory ruling under HRS

---

[20]   ALU does not specify which "other means of review are available" that would preclude the applicability of declaratory judgment in this case. CARD, 114 Hawai'i at 197, 159 P.3d at 156.  By analogy to the facts of CARD, it appears that ALU is referring to an appeal of HPERB's 1972 decisions under HRS § 91-14.

§ 91-8 to challenge a specific, final agency ruling.  Id.  But here, there is no definitive ruling or order by HLRB on the issue of whether graduate assistants are "employee[s]" under HRS § 89-2.  Therefore, ALU's prospective petition for declaratory judgment before HLRB would not be a "second bite at the apple," because no first bite was taken.

We agree with HLRB.  CARD does not preclude ALU from petitioning for declaratory judgment from HLRB.  In CARD, we distinguished between "a method of review of a determination already made," and "a method of requesting an agency to make a determination."  Id. at 199, 159 P.3d at 158 (quoting Wis. Fertilizer Ass'n v. Karns, 158 N.W.2d 294, 300 (Wis. 1968)). Declaratory judgment was not appropriate for "review of agency determinations that have already been made and which have not been timely appealed."  Id. at 196, 159 P.3d at 155.  But declaratory judgment is appropriate when "requesting an agency to make a determination" on a question that has not yet been resolved.  Id. at 199, 159 P.3d at 158 (quoting Karns, 158 N.W.2d at 300).  As we have explained, HLRB has not definitively ruled that graduate assistants are not "employee[s]" under HRS § 89-2, so the declaratory judgment action here is not "review[ing] . . . a determination already made" within the

meaning of CARD.  Id.  ALU may therefore ask HLRB for a determination on the questions raised in this action: whether graduate assistants fall within the definition of "employee[s]" under HRS § 89-2, whether graduate students may be included in Unit 13 under HRS § 89-6, or whether HPERB's 1972 decisions continue to exclude graduate assistants from Units 7 and 8 given that their duties have allegedly changed.

Counsel for HLRB represented at oral argument that if ALU were to bring a HAR § 12-42-9 petition, none of the members of HLRB's current board would find that HPERB's 1972 rulings preclude HLRB from considering whether ALU's members are employees under HRS § 89-2.[21]  Given that the import of Decision Nos. 21 and 25 is at best unclear, that HAR § 12-42-9 is open to "interested person[s] or organization[s]" like ALU, and that HLRB has indicated that ALU is not precluded from a declaratory

---

[21]    Counsel for HLRB represented to the court that the three members of its board at the time of oral argument (held January 19, 2023), all believe that Decision Nos. 21 and 25 do not have preclusive effect on the question of whether graduate assistants are "employee[s]" under HRS § 89-2 because HLRB has not ruled on that issue.  Oral Argument at 41:03, https://www.courts.state.hi.us/oral-argument-before-the-hawaii-supreme-court-scap-22-0000029 [https://perma.cc/KBX5-8J9L].  Counsel for HLRB noted that one member of the board (the holdover board member) may change before a proceeding raising those issues, and that it could not make any representations as to the new board member's position.  Id. at 41:03, 42:00.

judgment action, we conclude that the § 12-42-9 procedure remains available to ALU.  Accordingly, the circuit court was correct to hold that it lacked jurisdiction to issue a declaratory judgment.

**B.    The Circuit Court Erred in Dismissing BOR on the Basis of HRS § 304A-108(a), but the Error was Harmless**

The circuit court granted HLRB's motion to dismiss on the ground that it had no jurisdiction over ALU's action, then granted BOR's motion to dismiss on the basis that BOR was not a proper party under HRS § 304A-108(a).[22]  Having granted these two motions to dismiss, the circuit court issued a Final Judgment dismissing the case.  The circuit court erred in dismissing BOR on the basis of HRS § 304A-108(a) after it had determined it had no jurisdiction over the action.  Norris v. Six Flags Theme Parks, Inc., 102 Hawai'i 203, 207, 74 P.3d 26, 30 (2003) (noting

---

[22]    HRS § 304A-108(a) provides:

The university may sue and be sued in its corporate name. Notwithstanding any other law to the contrary, all claims arising out of the acts or omissions of the university or the members of its board of regents, its officers, or its employees, including claims permitted against the State under chapter 661, part I, and claims for torts permitted against the State under chapter 662, may be brought only pursuant to this section and only against the university. . . .

(Emphasis added.)

that "jurisdiction should be determined before consideration of the merits of any claim or defense"); HRCP Rule 12(h)(3) (2018, last amended January 1, 2000) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

The circuit court's error, however, was harmless.[23] Reyes v. Kuboyama, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) ("[W]here the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." (citing Brooks v. Minn, 73 Haw. 566, 576—77, 836 P.2d 1081, 1087 (1992))).

## V. CONCLUSION

Though we recognize that ALU spent several years in pursuit of collective bargaining rights for its members through this lawsuit, the circuit courts cannot entertain a declaratory judgment action until ALU has exhausted its administrative

---

[23] The circuit court also erred when it stated in its order granting BOR's motion to dismiss that State had joined BOR's motion to dismiss. State joined HLRB's motion to dismiss, not BOR's. This error was also harmless. The circuit court reached the correct result when it dismissed the suit in its entirety.

remedies.  Accordingly, we affirm the circuit court's

January 28, 2022 Final Judgment dismissing the action.

| | |
|---|---|
| Lance D. Collins, and<br>Bianca K. Isaki,<br>for appellants<br>Academic Labor United,<br>Ashley Hiʻilani Sanchez,<br>Kawaenaʻulaokalā Kapahua,<br>and Cameron Grimm | /s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins |



Joseph F. Kotowski III,           /s/ Michael D. Wilson
for appellee
Board of Regents of the
University of Hawaiʻi

Midori K. Hirai,
Linda K. Goto (on the briefs),
for appellee
Hawaiʻi Labor Relations Board

Richard H. Thomason,
James E. Halvorson (on the briefs),
for appellee
State of Hawaiʻi